UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                                   Case No. 1:22-cr-20114-2

v.                                                              Honorable Thomas L. Ludington
                                                               United States District Judge
DERWIN ANDREWS,

                    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO RECUSE**

Defendant Derwin Andrews was stopped by Michigan State Police while riding in the front-passenger seat of a rental car in September 2021. Codefendant Devon Morgan was driving and Codefendant Cortiyah Moore was in the back passenger seat. A search of the car uncovered weapons and narcotics and all three were arrested and charged with, among other counts, a conspiracy to distribute and possess narcotics. The undersigned presided over Moore's case in October 2022, while Morgan and Defendant remained at large. Now, nearly one year later, Defendant seeks the undersigned's recusal in his case because the undersigned presided over Moore's trial. But Defendant cannot show any extrajudicial or personal prejudice and cannot show that this Court's conduct throughout Moore's trial renders fair judgement in Defendant's case impossible, so his Motion will be denied.

**I.**

On September 27, 2021, Defendant Derwin Andrews was riding in the front passenger seat of a 20001 Chevy Equinox in Saginaw, Michigan, alongside Co-defendant Morgan—the driver—and Codefendant Moore—who was seated in the rear passenger seat, behind Defendant. *See* ECF No. 130 at PageID.1322. Importantly, although the Equinox was a rented vehicle, Defendant,

Morgan, and Moore were not identified by the rental agreement as authorized to drive or possess the car. *Id.* at PageID.1326. At 10:45 PM, Michigan State Police (MSP) Trooper Cody Siterlet conducted a traffic stop after he saw the Equinox cross the median line while driving, in violation of MCLA § 257.649. *Id.* at PageID.1322. The traffic violation can be viewed on Trooper Siterlet's dashcam video. *See* Gov't's Resp. Ex. 2, ECF No. 125, 0:19–0:30 [hereinafter "Dashcam"].

Once pulled over, Morgan informed Trooper Siterlet that the group was "just chilling" and seemingly showed Trooper Siterlet the "rental agreement." Dashcam at 1:00–1:15. Trooper Siterlet then asked the group for identification, but Morgan produced an ID card, rather than a valid license. *Id.* at 1:15, 2:08–2:20. Trooper Siterlet then asked Morgan to step out of the car, placed him in handcuffs, and informed him that he was "just being detained." *Id.* at 2:20–2:54. Once Morgan was out of the car and in handcuffs, Trooper Siterlet frisked him and asked if there was "anything in the ride [he] should be worried about." *Id.* at 3:32– 4:20. During the pat down, Trooper Siterlet uncovered a large amount of cash in Morgan's pocket. *Id.* at 4:20–5:13. Morgan indicated it was worth "about $4,500" and that he won the cash at a local casino. *Id.*; *see also* ECF No. 130 at PageID.1323, 1327 (noting the seizure of $4,760 from Morgan). After Trooper Siterlet counted the money, he placed it back in Morgan's pocket, and continued the frisk. Dashcam at 4:20–5:13. Trooper Siterlet then asked Morgan to "have a seat" in the patrol car "for a second." *Id.* at 6:17–6:20. Once in the patrol car, Morgan told Trooper Siterlet that he did not consent to a search of the Equinox. *Id.* at 6:35–6:46 ("I didn't say you could check it."). Trooper Siterlet then explained that, since Morgan did not own the Equinox and could not provide a license, the Equinox would likely be towed from the scene and likely searched.  *Id.* at 6:55–7:30. Morgan responded, "just have it towed." *Id.* at 7:29–7:31.

While Morgan remained in the patrol car, Trooper Siterlet approached the rear passenger door, opened it, and asked Moore to step out of the Equinox. *Id.* at 7:38–7:45. As he was asking Moore to step out, Trooper Siterlet observed a tan pistol at Moore's feet, under the front passenger seat. ECF No. 130 at PageID.1323. Trooper Siterlet directed Moore to not move and directed Defendant, still sitting in the front passenger seat, to put his hands on the dash. Dashcam at 7:46–7:56. The other responding MSP trooper removed Moore from the rear passenger seat, placed him in handcuffs, frisked him, and sat him on the hood of the patrol car. *Id.* at 8:09–9:11. Trooper Siterlet then removed Defendant from the car, placed him in handcuffs, and escorted him to a nearby tree for a protective frisk. *Id.* at 9:38–11:01.

In addition to (1) the tan 9mm Glock semi-automatic handgun in the rear passenger seat, a subsequent search of the Equinox's middle console revealed (2) a .45 caliber modified fully automatic Glock 21 with a laser sight and a loaded 40-round drum magazine, (3) 3.94 grams of crack cocaine, and (4) .99 grams of fentanyl. *See* ECF No. 130 at PageID.1323, 1327–28. Importantly, Defendant was sitting in the front passenger seat at the time of the traffic stop and, in the incident report, Trooper Siterlet noted it would not have been possible for the gun found at Moore's feet to have passed from the front to the back of the Equinox under Defendant's seat. *Id.* at PageID.1323. However, the Government asserts that Defendant's fingerprints were located on the gun found at Moore's feet. ECF Nos. 125 at PageID.1291, 128 at PageID.1314.

Accordingly, on March 2, 2022, Defendant, Moore, and Morgan were named as coconspirators in a seven–count Indictment. ECF No. 1. On July 20, 2022, a Second Superseding Indictment was filed, charging all three with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I) and possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C.

§ 2 (Count II). ECF No. 48 Counts III through VII of the Second Superseding Indictment charged Moore, Morgan, or Defendant individually or in groups of two with various other firearm and drug offenses. *See id.*

In October 2022, the undersigned presided over Moore's jury trial, which resulted in a jury finding Moore guilty as charged. ECF No. 75 at PageID.354. Moore was sentenced to 100 months' total imprisonment. *Id.* at PageID.355.

After Moore's trial and sentencing, on June 28, 2023, a Third Superseding Indictment was issued as to Defendant and Morgan. ECF No. 107. Defendant is charged with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I); possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); possession of a firearm in furtherance of a drug trafficking crime/aiding and abetting, 18 U.S.C. § 924(c)(1)(A) and (B)(iii) 18 U.S.C. § 2 (Count III); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count V). *See id.*

Nearly two months after filing a series of pretrial motions, including a Motion to Suppress, ECF No. 121, a Motion for Revocation of Detention Order, ECF No. 122, and a Motion in Limine to Exclude the Government's Expert, ECF No. 123, and nearly one year after Moore's trial, Defendant filed a Motion for Recusal under 28 U.S.C. § 455 because this Court presided over Moore's trial, ECF No. 144, and the Government Responded, ECF No. 145. For reasons explained below, Defendant's Motion will be denied.

## II.

Federal judges "shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned" or "[w]here [they have] a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the

proceeding." 28 U.S.C. §§ 455(a) and (b)(1). Under 28 U.S.C. § 455, "[r]ecusal is mandated . . . only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Surapaneni*, 14 F. App'x 334, 337 (6th Cir. 2001) (quoting *Easley v. Univ. of Michigan Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988); *see also United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993)).

Prejudice or bias sufficient to justify recusal can take one of two forms. First, and most commonly, prejudice or bias can be *personal* or *extrajudicial*, defined as:

> prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.

*United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999) (rejecting a defendant's recusal argument because "[a]ny information the judge learned about [the defendant] or the events surrounding his criminal activities came from his judicial activities and not from extrajudicial sources."); *United States v. Sammons*, 918 F.2d 592 (6th Cir.1990), *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir.1989)); *see also Surpaneni*, 14 F. App'x at 337.

Second, and less commonly, a party can, "in theory" show sufficient bias or prejudice to warrant a judge's recusal from misconduct at trial or related proceedings, but the Supreme Court has erected an extremely high hurdle that a party must overcome to do so:

> It is wrong in theory . . . to suggest . . . that [an] "extrajudicial source" is the only basis for establishing disqualifying bias or prejudice. It is the only common basis, but not the exclusive one[.] A favorable or unfavorable predisposition can also . . . be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment.

*Liteky v. United States*, 510 U.S. 540, 551 (1994). The Supreme Court further clarified that:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . current . . . or . . . prior proceedings, do *not* constitute a basis for a bias or [prejudice] *unless* they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.* at 555 (emphasis added).

### III.

Defendant has not shown sufficient bias or prejudice to warrant recusal. Importantly, Defendant does not allege *personal* or *extrajudicial* prejudice "emenat[ing] from some source other than participation in the proceedings or prior contact with related cases." *Hartsel*, 199 F.3d at 820. Defendant's Motion lacks any allegation that the undersigned has personal bias due to background, associations, or any source outside the confines of the courtroom. *See* ECF No. 144.

Instead, Defendant argues for recusal, generally, because "this Honorable Court has previously sat through the pre-trial and trial of [co]defendant Moore." ECF No. 144 at PageID.1378. But this in insufficient. *See Hartsel*, 199 F.3d at 820 (holding that recusal was not warranted merely because the trial judge, presiding over defendant's bench trial, had previously presided over a co-conspirator's plea and sentencing and "obtained personal knowledge of the disputed evidentiary facts" in the process). To warrant recusal, Defendant must also show that this Court's conduct throughout Moore's trial vested some "deep-seated favoritism or antagonism that would make fair judgement impossible." *Liteky*, 510 U.S. at 555. Defendant has not made this showing.

Specifically, Defendant argues for recusal because (1) the Court allowed the Government's expert in Moore's trial to testify which, according to Defendant, "established the only 'proof' of the charged conspiracy, without any evidentiary support" and the Court declined to address Moore's pretrial motion to strike the expert until trial; (2) the Court, according to Defendant,

- 6 -

"comment[ed] o[n] its belief that drug dealer[]s used leased cars[;]"[1] (3) the Court, according to Defendant, expressed a belief that Defendant "was fully aware of the Indictment long before his arrest and was avoiding detection[;]"[2] and (4) this Court "declin[ed] to even consider" Defendant's Motion for Revocation of Detention Order, ECF No. 122, at an October 3, 2023 motion hearing.[3] ECF No. 144 at PageID.1378.

Plainly, none of Defendant's arguments—even if they were all true—"display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*. 510 U.S. at 555. A recent Sixth Circuit case underscores just how high this bar is for movants. In *Liggins v. United States*, the Sixth Circuit held that, "[d]ifficult as the recusal standard may be to reach," it was satisfied by a district judge's comments that he was "tired of this case [and] this defendant" and that the Black defendant "look[ed] like a criminal" and was doing "what criminals do." *United States v. Liggins*, 76 F.4th 500, 506–07 (6th Cir. 2023). These comments, the Sixth Circuit held, "demonstrated 'a deep-seated . . . antagonism that would make fair judgement impossible[.]" *Id.* at 508 (quoting *Liteky*, 510 U.S. at 555). The comments and conduct Defendant alleges are distinguishable from that of the district judge in *Liggins*. Fair judgement is far from impossible, here. *See United States v. Adams*, 722 F.3d at 838 (rejecting a defendant's recusal argument

---

[1] Defendant does not provide any citation and does not identify when or where this Court allegedly made such statement. *See* ECF No. 144 at PageID.1378.

[2] Defendant does not provide any citation and does not identify when or where this Court allegedly expressed such belief. *See* ECF No. 144 at PageID.1378.

[3] True, Defendant's Motion for Revocation, ECF No. 122, was not heavily discussed at the October 3, 2023 motion hearing. But, importantly, there were five other outstanding motions, *see* ECF Nos. 121; 123; 135; 136; 138, some of which this Court determined were more contentious and thus warranted more discussion. Moreover, the motion hearing was rescheduled for October 18, 2023 because Trooper Siterlet was unavailable due to a training conflict. ECF No. 141. And although this Court did not go on record during the October 3 hearing, the Parties and this Court spent nearly two hours discussing the pending pretrial motions and Defense counsel was allowed to consult directly with Defendant before deciding how best to proceed.

because the defendant could not show any personal or extrajudicial bias and could not "meet the 'extreme' bias or prejudice standard discussed in *Liteky*[,]" even though the defendant could show that the judge had made critical and disapproving statements).

Defendant also argues that this Court should recuse itself because of the conduct of Moore's defense attorney at Moore's trial. *See* ECF No. 144 at PageID.1378 (arguing for recusal because "the alleged illegal stop . . . was not challenged by Moore's counsel" and "there was no challenge by Moore's veteran criminal defense counsel [of the Government's expert in Moore's trial]"). But these arguments do not identify any perceived prejudice or bias held by *this Court*.

In sum, because Defendant cannot show any extrajudicial bias or personal prejudice and cannot show that this Court's conduct throughout Codefendant Moore's trial renders fair judgement impossible in Defendant's trial, Defendant's Motion for Recusal will be denied.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Recusal, ECF No. 144, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

Dated: October 13, 2023                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge