UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case No. 1:22-cr-20114-2

v.                                                  Honorable Thomas L. Ludington
                                                        United States District Judge
DERWIN ANDREWS,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION TO RECUSE AND ADJOURN EVIDENTIARY HEARING**

Defendant Derwin Andrews was stopped by Michigan State Police while riding in the front-passenger seat of a rental car in September 2021. Codefendant Devon Morgan was driving and codefendant Cortiyah Moore was in the back passenger seat. A search of the car uncovered weapons and narcotics and all three were arrested and charged with, among other counts, a conspiracy to distribute and possess narcotics. The undersigned presided over codefendant Moore's jury trial in October 2022, while codefendant Morgan and Defendant remained at large.

Defendant first sought the undersigned's recusal from pretrial proceedings on October 10, 2023 because the undersigned presided over codefendant Moore's jury trial. But recusal was denied. Defendant then sought reconsideration. But reconsideration was denied, too. Now, Defendant has filed a Renewed Motion seeking the undersigned's recusal and an adjournment of the evidentiary hearing regarding Defendant's Motion to Suppress, which was continued to allow Defendant adequate time to complete cross examination of Government witnesses. Defendant's Renewed Motion for recusal will be denied for the same reasons his first Motion was: Defendant cannot show any extrajudicial or personal prejudice and cannot show that this Court's conduct

throughout pretrial proceedings shows a "deep-seated antagonism" or renders fair judgement impossible.

### I.

### A.

On September 27, 2021, Defendant Derwin Andrews was riding in the front passenger seat of a 2021 Chevy Equinox in Saginaw, Michigan, alongside codefendant Morgan—the driver—and codefendant Moore—who was seated in the rear passenger seat, behind Defendant. *See* ECF No. 130 at PageID.1322. Importantly, although the Equinox was a rented vehicle, Defendant, Morgan, and Moore were not identified by the rental agreement as authorized to drive or possess the car. *Id.* At PageID.1326. At 10:45 PM, Michigan State Police (MSP) Trooper Cody Siterlet conducted a traffic stop after he saw the Equinox cross the median line while driving, in violation of MCLA § 257.649. *Id.* at PageID.1322. The traffic violation can be viewed on Trooper Siterlet's dashcam video. *See* Gov't's Resp. Ex. 2, ECF No. 125, 0:19–0:30 [hereinafter "Dashcam"].

Once pulled over, Morgan informed Trooper Siterlet that the group was "just chilling" and seemingly showed Trooper Siterlet the "rental agreement." Dashcam at 1:00–1:15. Trooper Siterlet then asked the group for identification, but Morgan produced an ID card, rather than a valid license. *Id.* at 1:15, 2:08–2:20. Trooper Siterlet then asked Morgan to step out of the car, placed him in handcuffs, and informed him that he was "just being detained." *Id.* at 2:20–2:54. Once Morgan was out of the car and in handcuffs, Trooper Siterlet frisked him and asked if there was "anything in the ride [he] should be worried about." *Id.* at 3:32–4:20. During the pat down, Trooper Siterlet uncovered a large amount of cash in Morgan's pocket. *Id.* at 4:20–5:13. Morgan indicated it was worth "about $4,500" and that he won the cash at a local casino. *Id.*; *see also* ECF No. 130 at PageID.1323, 1327 (noting the seizure of $4,760 from Morgan). After Trooper Siterlet counted

the money, he placed it back in Morgan's pocket, and continued the frisk. Dashcam at 4:20–5:13. Trooper Siterlet then asked Morgan to "have a seat" in the patrol car "for a second." *Id.* at 6:17–6:20. Once in the patrol car, Morgan told Trooper Siterlet that he did not consent to a search of the Equinox. *Id.* at 6:35–6:46 ("I didn't say you could check it."). Trooper Siterlet then explained that, since Morgan did not own the Equinox and could not provide a license, the Equinox would likely be towed from the scene and likely searched. *Id.* at 6:55–7:30. Morgan responded, "just have it towed." *Id.* at 7:29–7:31.

While Morgan remained in the patrol car, Trooper Siterlet approached the rear passenger door, opened it, and asked Moore to step out of the Equinox. *Id.* at 7:38–7:45. As he was asking Moore to step out, Trooper Siterlet observed a tan pistol at Moore's feet, under the front passenger seat. ECF No. 130 at PageID.1323. Trooper Siterlet directed Moore to not move and directed Defendant, still sitting in the front passenger seat, to put his hands on the dash. Dashcam at 7:46–7:56. Trooper Roy, who arrived at the scene shortly after Trooper Siterlet initially stopped the Equinox, removed Moore from the rear passenger seat, placed him in handcuffs, frisked him, and sat him on the hood of the patrol car. *Id.* at 8:09–9:11. Trooper Siterlet then removed Defendant from the car, placed him in handcuffs, and escorted him to a nearby tree for a protective frisk. *Id.* at 9:38–11:01.

In addition to (1) the tan 9mm Glock semi-automatic handgun in the rear passenger seat, a subsequent search of the Equinox's middle console revealed (2) a .45 caliber modified fully automatic Glock 21 with a laser sight and a loaded 40-round drum magazine, (3) 3.94 grams of crack cocaine, and (4) .99 grams of fentanyl. *See* ECF No. 130 at PageID.1323, 1327–28. Importantly, Defendant was sitting in the front passenger seat at the time of the traffic stop and, in the incident report, Trooper Siterlet noted it would not have been possible for the gun found at

Moore's feet to have passed from the front to the back of the Equinox under Defendant's seat. *Id.* at PageID.1323. However, the Government asserts that Defendant's fingerprints were located on the gun found at Moore's feet. ECF Nos. 125 at PageID.1291, 128 at PageID.1314.

**B.**

Accordingly, on March 2, 2022, Defendant, Moore, and Morgan were named as coconspirators in a seven–count Indictment. ECF No. 1. On July 20, 2022, a Second Superseding Indictment was filed, charging all three with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I) and possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). ECF No. 48. Counts III through VII of the Second Superseding Indictment charged Moore, Morgan, or Defendant individually or in groups of two with various other firearm and drug offenses. *See id.*

In October 2022, the undersigned presided over Moore's jury trial, which resulted in a jury finding Moore guilty as charged. ECF No. 75 at PageID.354. Moore was sentenced to 100 months' total imprisonment. *Id.* at PageID.355.

After Moore's trial and sentencing, on June 28, 2023, a Third Superseding Indictment was filed regarding Defendant and Morgan. ECF No. 107. Defendant is charged with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I); possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); possession of a firearm in furtherance of a drug trafficking crime/aiding and abetting, 18 U.S.C. § 924(c)(1)(A) and (B)(iii) 18 U.S.C. § 2 (Count III); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count V). *See id.*

On August 15, 2023, Defendant filed (1) a Motion to Suppress all evidence obtained during the September 27 stop, ECF No. 121; (2) a Motion for Revocation of Detention Order seeking Defendant's release on bond, ECF No. 122; and (3) a Motion in Limine to Exclude the Government's proffered expert witness, ECF No. 123. These pretrial motions remain pending. An evidentiary hearing was scheduled for October 3, 2023. at 2:00 PM, ECF No. 124, but Trooper Siterlet was unavailable due to a training conflict, so the hearing was rescheduled for October 18, 2023 at 9:00 AM. ECF No. 141. Nevertheless, the Parties still conferred off the record on October 3, 2023, to discuss the pending pretrial motions and case scheduling. At the October 18 evidentiary hearing, Defense Counsel raised arguments that were not emphasized in his prior pleadings and needed additional time to complete cross examination, so this Court directed supplemental briefing and continued the hearing to November 8, 2023 at 10:00 AM. ECF No. 157.

Nearly two months after filing these pretrial motions and nearly one year after codefendant Moore's trial, Defendant filed a motion seeking to recuse the undersigned from pretrial matters in his case under 28 U.S.C. § 455 because this Court presided over codefendant Moore's trial and sentencing. ECF No. 144. This Court denied Defendant's Motion on October 13, 2023 because Defendant did not identify any personal or extrajudicial bias or prejudice held by the undersigned and did not show that the undersigned presiding over codefendant Moore's trial resulted in a "deep-seated favoritism or antagonism that would make fair judgment impossible." ECF No. 146; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994). Three days later, Defendant filed a Motion for Reconsideration, ECF No. 151, but this Motion was denied because Defendant did not identify any mistake, new fact, or change in the law that warranted a different outcome. ECF No. 155.

On the afternoon of Friday, November 3, 2023, Defendant filed an Emergency Motion to Adjourn the evidentiary hearing scheduled for the morning of Wednesday, November 8 2023 and

a Renewed Motion for Recusal from Pretrial Proceedings (the "Renewed Motion") ECF No. 164. Defendant argues that four "findings" in this Court's October 23, 2023 Order directing supplemental briefing and adjourning the evidentiary hearing (the "October 23 Order") "reflect prejudgment of issues presented before the conclusion of the" evidentiary hearing. *Id.* at PageID.1499–501. The Government responded that Defendant has failed to present any evidence of bias, prejudice, or partiality held by the undersigned and thus Defendant's Renewed Motion should be denied. ECF No. 165.

## II.

Federal judges "shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned" or "[w]here [they have] a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §§ 455(a) and (b)(1). Under 28 U.S.C. § 455, "[r]ecusal is mandated . . . only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Surapaneni*, 14 F. App'x 334, 337 (6th Cir. 2001) (quoting *Easley v. Univ. of Michigan Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988); *see also United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993)).

Prejudice or bias sufficient to justify recusal can take one of two forms. First, and most commonly, prejudice or bias can be *personal* or *extrajudicial*, defined as:

> prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.

*United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999) (rejecting a defendant's recusal argument because "[a]ny information the judge learned about [the defendant] or the events surrounding his criminal activities came from his judicial activities and not from extrajudicial sources."); *United States v. Sammons*, 918 F.2d 592 (6th Cir.1990), *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir.1989)); *see also Surpaneni*, 14 F. App'x at 337.

Second, and less commonly, a party can, "in theory" show sufficient bias or prejudice to warrant a judge's recusal from misconduct at trial or related proceedings, but the Supreme Court has erected an extremely high hurdle that a party must overcome to do so:

> It is wrong in theory . . . to suggest . . . that [an] "extrajudicial source" is the only basis for establishing disqualifying bias or prejudice. It is the only common basis, but not the exclusive one[.] A favorable or unfavorable predisposition can also . . . be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment.

*Liteky v. United States*, 510 U.S. at 555. The Supreme Court further clarified that:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . current . . . or . . . prior proceedings, do *not* constitute a basis for a bias or [prejudice] *unless* they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.* at 555 (emphasis added).

### III.

Defendant has not shown sufficient bias or prejudice to warrant recusal. Importantly, Defendant does not allege personal or extrajudicial prejudice "emenat[ing] from some source other than participation in the proceedings or prior contact with related cases." *Hartsel*, 199 F.3d at 820. Defendant's Renewed Motion lacks any allegation that the undersigned has personal bias due to background, associations, or any source outside the confines of the courtroom. *See* ECF No. 164.

Instead, Defendant argues for recusal because this Court's October 23 Order contained four "findings and conclusions concerning the stop and the arrest" which "provide proof that the issues in dispute have already been prejudged." ECF No. 164 at PageID.1498. But none of these "findings" or "conclusions" show "deep-seated . . . antagonism that would make fair judgement impossible[,]" *Liteky*, 510 U.S. at 555, so Defendant's Renewed Motion will be denied.

Defendant first takes issue with the following language within the October 23 Order:

> At 10:45 PM, Michigan State Police (MSP) Trooper Cody Siterlet conducted a traffic stop after he observed the Equinox commit traffic violations, which were captured on his dashcam video.

ECF Nos. 157 at PageID.1452–53 (internal citations omitted); 164 at PageID.1499. Defendant argues that this language is "an acceptance, as true, of [Trooper] Siterlet's direct testimony" which was, according to Defendant, a "ploy" to expand the timeline of Trooper Siterlet's pre-stop activities, because Defendant believes the stop actually occurred earlier in the evening.[1] ECF No. 164 at PageID.1499. Defendant's argument is unfounded. The MSP Incident Report states that the stop was conducted "on or after" 10:45 PM on September 27, 2021. ECF No. 130 at PageID.1322. And, even if the stop occurred, in fact, at some time other than 10:45 PM, the undersigned's reference to the MSP Incident Report—which Defendant never disputed the accuracy of until his Renewed Motion—hardly rises to the level of "deep-seated . . . antagonism that would make fair judgement impossible." *Liteky*, 510 U.S. at 555.

---

[1] Defendant relies on the daily MSP logs for Trooper Siterlet and Roy, provided by the Government, which indicate that Trooper Siterlet's assignment in the area where the Equinox was stopped began at 10:10 PM and that Trooper Roy arrived to assist at 10:40 PM. *See* ECF No. 164-1. Although there may be a five-minute discrepancy between these logs and the MSP Incident Report, *see* ECF No. 130 at PageID.1322, Defendant does not explain how this discrepancy alone is evidence of a "ploy" by MSP to "expand the timeline" of the stop. *See* ECF No. 164 at PageID.1499.

Second, the October 23 Order directed the Parties to submit supplemental briefing, in part because:

> [A]t the [October 18] evidentiary hearing, Defendant argued [] even though the officers *did* observe the alleged traffic violations, these violations were "de minimis" and cannot support probable cause.

ECF No. 157 at PageID.1457. Defendant argues this language is proof of prejudgment. ECF No. 164 at PageID.1499–500. It is not. The language cited above reflected this Court's understanding of one of Defendant's arguments at the October 18 evidentiary hearing—it does not, as Defendant appears to believe, "presume[] the traffic stop to have been legal." ECF No. 161 at PageID.1472. Indeed, Defendant filed supplemental briefing supporting this specific argument, concluding that "the case law as cited holds that a de minimis violation does not provide reasonable suspicion to infringe upon [Fourth] Amendment Rights and the subsequent search and seizure is tainted[.]" ECF No. 161 at PageID.1475–80. Regardless, the October 23 Order language does not show "deep-seated antagonism," nor does it show that the undersigned is incapable of rendering fair judgement throughout Defendant's pretrial proceedings. *Liteky*, 510 U.S. at 555; *c.f. United States v. Liggins*, 76 F.4th 500, 506–07 (6th Cir. 2023) (finding "deep-seated antagonism" and fair judgement impossible, sufficient to grant recusal, when judge commented that defendant "looked like a criminal" and "was doing what criminals do").

Third, the October 23 Order stated:

> Trooper Siterlet explained that, since Morgan did not own the Equinox and could not provide a driver's license, the Equinox would likely be towed from the scene and subject to an inventory search. Morgan responded, "just have it towed." Accordingly, while Morgan remained in the patrol car, Trooper Siterlet approached the rear passenger door of the Equinox, opened it, and asked Moore to step out.

ECF Nos. 157 at pageID.1453 (internal citations omitted). Defendant argues this is grounds for recusal because, at the October 18 evidentiary hearing, Trooper "Siterlet testified that he went back

to the car, not to remove passengers in preparation of towing, but to continue to investigate the traffic violation and that he was extending the stop for the traffic violations." ECF No. 164 at PageID.1500. But the two are not mutually exclusive and the undersigned never stated that Trooper Siterlet returned to the Equinox "in preparation for towing." Far from showing that fair judgement in Defendant's case is impossible, the above-cited language accurately tracks the undisputed Dashcam footage. *See* Dashcam at 6:55–7:45.

Lastly, the October 23 Order stated that "Trooper Siterlet . . . removed Defendant from the car, placed him in handcuffs, and escorted him to a nearby tree for a protective frisk." ECF No. 157 at PageID.1453–54 (citing Dashcam at 9:38– 11:01). Defendant argues this "finding" warrants recusal because the Incident Report and Trooper Siterlet's testimony at the October 18 evidentiary hearing "affirm that [Siterlet] arrested Defendant[,] not 'removed' him from the car[.]" ECF No. 164 at PageID.1500-01. Defendant is mistaken and this argument is misplaced. The undisputed Dashcam footage shows that Trooper Siterlet physically removed Defendant from the Equinox, placed him in handcuffs, and escorted him to a nearby where he was frisked. Dashcam at 9:38–11:01. The above-cited language of the October 23 Order was not suggesting that Defendant was not arrested. Indeed, the October 23 Order goes on to discuss the circumstances of Defendant's arrest and indictment. *See* ECF No. 157 at PageID.1454–57. And, like all other statements within the October 23 Order, this statement is not of the kind which would warrant the undersigned's recusal from pretrial proceedings. *See Liteky*, 510 U.S. at 555; *Liggins*, 76 F.4th at 506–07.

In sum, these four "findings" of the October 23 Order do not "reflect prejudgment," and do not support Defendant's suggestion that the undersigned is interested in denying his pretrial motions because, if granted, codefendant Moore's conviction will be undermined. *See* ECF No. 164 at PageID.1501. To warrant recusal, Defendant must show either (1) personal or extrajudicial

prejudice or (2) that intra-judicial conduct has vested "deep-seated favoritism or antagonism" in the undersigned "that would make fair judgement impossible." *Liteky*, 510 U.S. at 555. But Defendant has made neither showing. *See United States v. Adams*, 722 F.3d at 838 (denying recusal because the defendant could not show any personal or extrajudicial bias and could not "meet the 'extreme' bias or prejudice standard discussed in *Liteky*[,]" even though the judge made critical and disapproving statements). Defendant's Renewed Motion seeking the undersigned's recusal from pretrial proceedings will be denied, and the evidentiary hearing scheduled for November 8, 2023 at 10:00 AM EST, will not be adjourned.[2]

## IV.

Accordingly, it is **ORDERED** that Defendant's Emergency Motion to Adjourn Evidentiary Hearing and Renewed Motion for Recusal, ECF No. 164, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

Dated: November 7, 2023                 s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

---

[2] Notably, this is not the first time Defendant has filed an eleventh-hour emergency motion seeking to adjourn an upcoming hearing. On October 17, 2023, Defendant filed an Emergency Motion Seeking to Adjourn the Evidentiary Hearing scheduled for October 18, 2023 because he needed additional information to be prepared for the hearing. ECF No. 154. This Court denied the Motion and the October 18 evidentiary hearing proceeded as scheduled. *See* ECF No. 157.