UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,           Case No. 1:22-cr-20114-2

v.                  Honorable Thomas L. Ludington
                    United States District Judge
DERWIN ANDREWS,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION *IN LIMINE* AND DENYING DEFENDANT'S MOTION TO HOLD HEARING AS MOOT**

  After the Government provided Defendant Derwin Andrews—facing various firearm and drug charges—with notice of its intent to call Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Kyle McGraw as an expert witness to testify about the *modus operandi* of drug traffickers. Defendant filed a Motion *in Limine* to exclude her testimony as inadmissible under Rules 702 and 704 of the Federal Rules of Evidence. But Defendant has not shown that Agent McGraw's proffered testimony is clearly inadmissible under either Rule, so his motion *in limine* will be denied. To the extent Defendant wishes to object to Agent McGraw's qualifications or testimony at trial, he is free to do so.

  After filing his motion *in limine*, Defendant filed a separate motion for a hearing before trial on his motion *in limine*. But a hearing for Defendant's motion *in limine* was already scheduled at the time Defendant filed his motion for hearing, and was ultimately held on January 2, 2024. So, Defendant's motion to hold a hearing will be denied as moot.

I.

On September 27, 2021, Defendant Derwin Andrews was riding in the front passenger seat of a 2001 Chevy Equinox in Saginaw, Michigan, alongside Codefendant Morgan—the driver—and Codefendant Moore—who was seated in the rear passenger seat, behind Defendant. *See* ECF No. 130 at PageID.1322. Importantly, although the Equinox was a rented vehicle, Defendant, Morgan, and Moore were not identified by the rental agreement as authorized to drive or possess the vehicle. *Id.* at PageID.1326. At 10:45 PM, Michigan State Police (MSP) Trooper Cody Siterlet conducted a traffic stop after he observed the Equinox cross the median line while driving, in violation of MCLA § 257.649. *Id.* at PageID.1322. The traffic violation can be viewed on Trooper Siterlet's dashcam video. *See* Gov't's Resp. Ex. 2, ECF No. 125, 0:19–0:30 [hereinafter "Dashcam"].

Once pulled over, Morgan informed Trooper Siterlet that the group was "just chilling" and seemingly showed Trooper Siterlet the "rental agreement." Dashcam at 1:00–1:15. Trooper Siterlet then asked the group for identification, but Morgan could not produce a valid driver's license. *Id.* at 1:15, 2:08–2:20. Accordingly, Trooper Siterlet asked Morgan to step out of the car, placed him in handcuffs, and informed him that he was being detained. *Id.* at 2:20–2:54. Once Morgan was out of the car and in handcuffs, Trooper Siterlet frisked him and asked if there was "anything in the ride [he] should be worried about." *Id.* at 3:32– 4:20. During the pat down, Trooper Siterlet uncovered a large amount of cash in Morgan's pocket which Morgan indicated he had won at a casino and was worth "about $4,500." *Id.* at 4:20–5:13; *see also* ECF No. 130 at PageID.1323, 1327 (noting the seizure of $4,760 from Morgan's person). After Trooper Siterlet counted the money, he placed it back in Morgan's pocket, and continued the frisk. Dashcam at 4:20–5:13. Trooper Siterlet then asked Morgan to "have a seat" in the patrol car "for a second." *Id.* at 6:17–6:20. Once in the patrol car, Morgan told Trooper Siterlet that he did not consent to a search of the

Equinox. *Id.* at 6:35–6:46 ("I didn't say you could check it."). Trooper Siterlet then explained that, since Morgan did not own the Equinox and could not provide a license, the Equinox would likely be towed from the scene and would likely be searched. *Id.* at 6:55–7:30. Morgan responded, "just have it towed." *Id.* at 7:29–7:31.

While Morgan remained in the patrol car, Trooper Siterlet approached the rear passenger door, opened it, and asked Moore to step out of the Equinox. *Id.* at 7:38–7:45. As he was asking Moore to step out, Trooper Siterlet observed a tan pistol at Moore's feet, under the front passenger seat. ECF No. 130 at PageID.1323. Trooper Siterlet directed Moore to not move and directed Defendant, still sitting in the front passenger seat, to put his hands on the dash. Dashcam at 7:46–7:56. The other responding MSP trooper removed Moore from the rear passenger seat, placed him in handcuffs, frisked him, and sat him on the hood of the patrol car. *Id.* at 8:09–9:11. Trooper Siterlet then removed Defendant from the car, placed him in handcuffs, and escorted him to a nearby tree for a protective frisk. *Id.* at 9:38–11:01.

In addition to (1) the tan 9mm Glock semi-automatic handgun in the rear passenger seat, a subsequent search of the Equinox's middle console revealed (2) a .45 caliber modified fully automatic Glock 21 with a laser sight and a loaded 40-round drum magazine, (3) 3.94 grams of fentanyl, and (4) .99 grams of crack cocaine. *See* ECF Nos. 130 at PageID.1323, 1327–28; 107 at PageID.1198; 125 at PageID.1291. Defendant had an additional (5) 2.62 g of crack cocaine in his pocket. *See* ECF No.107 at PageID.1198; 128 at PageID.1212; 130 at PageID.1326. Importantly, Defendant was sitting in the front passenger seat at the time of the traffic stop and, in the incident report, Trooper Siterlet noted it would not have been possible for the gun found at Moore's feet to have passed from the front to the back of the Equinox under Defendant's seat. ECF No. 130 at

PageID.1323. However, the Government asserts that Defendant's fingerprints were located on the gun found at Moore's feet. ECF Nos. 125 at PageID.1291; 128 at PageID.1314.

Accordingly, on March 2, 2022, Defendant, Moore, and Morgan were named as coconspirators in a seven–count Indictment. ECF No. 1. On July 20, 2022, a Second Superseding Indictment was filed, charging all three with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I) and possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). ECF No. 48 Counts III through VII of the Second Superseding Indictment charged Moore, Morgan, or Defendant individually or in groups of two with various other firearm and drug offenses. *See id.*

In October 2022, the undersigned presided over Moore's jury trial, which resulted in a jury finding Moore guilty as charged. ECF No. 75 at PageID.354. Moore was sentenced to 100 months' total imprisonment. *Id.* at PageID.355. At the time of Moore's trial, Morgan and Defendant remained at-large. Indeed, Defendant's arrest warrant was not executed until April 25, 2023. ECF No. 96.

After Defendant's arrest, a Third Superseding Indictment was filed, charging him with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I); possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); possession of a firearm in furtherance of a drug trafficking crime/aiding and abetting, 18 U.S.C. § 924(c)(1)(A) and (B)(iii) 18 U.S.C. § 2 (Count III); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count V). ECF No. 107.

On July 5, 2023, the Government filed notice of its intent to call six expert witnesses at Defendant's trial, including ATF Special Agent Kyle McGraw.[1] ECF No. 114. The Government explained that Agent McGraw has "worked in drug law enforcement for over 10 years"—the last five-and-a-half at the federal level—and has "investigated well over 100 drug felony offenses, has coordinated informants and has interview[ed] hundreds of individuals involved in drug trafficking[.]" *Id.* at PageID.1217–18. The Government further explained that Agent McGraw has made more than 30 undercover purchases of illegal drugs and has "executed countless drug search warrants." *Id.* at PageID.1218. Importantly, the Government also explained that Agent McGraw worked as a Bay Area Narcotics Enforcement Taskforce (BAYANET) detective for two years, before becoming an ATF Special Agent. *Id.* at PageID.1217. As a result of this experience, the Government indicated it would call Agent McGraw "as an expert on the *modus operandi* of street-level drug traffickers" in Saginaw, Michigan, *id.*, and that she would testify as to "the use of rental cars in the name of third-party nominees, personal use amounts/prices and distribution amounts of drugs, and packaging of Fentanyl and crack for distribution." ECF No. 128 at PageID.1316–17.

---

[1] Importantly, the Government intends to call Agent McGraw as both an *expert* and *fact* witness. ECF No. 128 at PageID.1318. Although the Sixth Circuit does not prohibit this practice and has held it is "not improper for the government to elicit . . . expert testimony from law enforcement officers who also testif[y] as fact witnesses[,]" the Sixth Circuit has "note[d] that both the district court and the prosecutor should take care to assure that the jury is informed of the [witness's] dual role . . . so that the jury can give proper weight to each type of testimony." *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996) (quoting *United States v. Young*, 745 F.2d 733, 760 (2d Cir.1984)). Specifically, the Sixth Circuit requires prosecutors, throughout their examinations of dual witnesses, to "delineate the transition" between the expert opinion testimony and fact testimony. *United States v. Neeley*, 308 F. App'x 870, 878 (6th Cir. 2009). The Sixth Circuit has also recognized that jury instructions may help jurors differentiate the two types of testimony elicited by the same witness. *See United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006). Accordingly, the Government indicated it would structure Agent McGraw's examination "to clearly delineate between her testimony as a fact witness and her testimony as an [expert] opinion witness" and that it would welcome a jury instruction to further delineate the two types of testimony. ECF No. 128 at PageID.1318.

The Government also proffered that McGraw would "provide an opinion on the nexus between firearms and drug trafficking, and the various roles employed by members of street-level drug conspiracies." *Id.* at PageID.1217.[2]

On August 15, 2023, among other pretrial motions, Defendant filed a Motion *in Limine* to exclude Agent McGraw's expert testimony under Federal Rules of Evidence 702 and 704. ECF No. 123. Defendant supplemented this motion on January 17, 2024. ECF No. 187. Months after Defendant filed his Motion *in Limine*, Defendant filed a Motion requesting a pretrial hearing on his Motion *in Limine* because he believed that this Court would not address the Motion *in Limine* until trial. ECF No. 173. But this Court scheduled a hearing on Defendant's Motion *in Limine* the day after it was filed, ECF No. 124, which was adjourned multiple times—largely at Defendant's request. *See* ECF Nos. 141; 157; 171; 181. Ultimately, this Court held a pretrial hearing on Defendant's Motion *in Limine* on January 2, 2024. So, Defendant's Motion for a pretrial hearing on his Motion *in Limine* will be denied as moot. The analysis that follows will focus solely on Defendant's Motion *in Limine* to exclude the proffered expert testimony of Agent McGraw.

## II.

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). Federal district courts rule on motions *in limine* "to narrow the issues remaining for trial and to minimize disruptions at trial[,]" *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999), with the guiding principle to ensure "evenhanded and expeditious management of trials." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677

---

[2] Notably, Agent McGraw testified both as an expert and fact witness for the Government at Codefendant Moore's trial. ECF No. 103 at PageID.805–36. The transcript of her testimony in that case is available on PACER. *See id.*

F. App'x 294 (6th Cir. 2017) (internal citations omitted). Indeed, "[a]lthough neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion i*n limine*, the Supreme Court has allowed district courts to rule on motions *in limine* "pursuant to the district court's inherent authority to manage the course of trials." *Id.* (citing *Luce*, 469 U.S. at 41 n. 4).

A district court should grant a motion *in limine* to exclude evidence "only when [that] evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citations omitted); *see also Good v. BioLife Plasma Servs.*, L.P., 605 F. Supp. 3d 947, 955 (E.D. Mich.), *reconsideration denied*, 647 F. Supp. 3d 555 (E.D. Mich. 2022); *Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial[.]").

Importantly, the denial of a motion *in limine* seeking to exclude evidence "does not necessarily mean that the court will admit the evidence at trial." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). Instead, "[d]enial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

### III.

Defendant argues that the proffered expert testimony of ATF Special Agent Kyle McGraw should be excluded under both Federal Rule of Evidence 702 and Rule 704. ECF No. 123 at

PageID.1282. As to Rule 702, Defendant argues that Agent McGraw is not qualified to render expert testimony, and that, even if qualified, Agent McGraw's testimony would be unreliable and unhelpful to the jury. *Id.* at PageID.1282, 1284–85. As to Rule 704, Defendant argues that Agent McGraw's proffered expert testimony on the *modus operandi* of drug traffickers in Saginaw, Michigan, improperly concerns the ultimate issue of Defendant's mental state. *Id.* at PageID.1285. Both grounds will be discussed in turn.

**A. Defendant's Rule 702 Challenge**

Defendant first argues Agent McGraw's testimony should be excluded under Federal Rule of Evidence 702. But Defendant has not shown that Agent McGraw is clearly unqualified to serve as an expert, nor that her proffered testimony is clearly unhelpful to the jury or unreliable. So, Defendant's Motion *in Limine* will be denied on this ground.

1.

For expert testimony to be admissible, it must satisfy Federal Rule of Evidence 702, which encompasses two preeminent Supreme Court decisions addressing expertise: *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Supreme Court stressed the gatekeeping role that district courts play when assessing whether proffered expert testimony is reliable and relevant. *See Daubert*, 509 U.S. at 589, 597. With a focus on *scientific* expertise, the Supreme Court noted the following factors as relevant in assessing whether a proffered expert's testimony is reliable: (1) whether the technique or theory can be or has been tested; (2) whether the theory or technique has been subject to peer review and publication; (3) whether the theory or technique has a known error rate; and (4) whether the theory or technique has some widespread "general acceptance" within the relevant scientific

community. *Id.* at 593–95. But the Supreme Court cautioned against an overly-rigid application of these factors and stressed that the relevant reliability inquiry "is a flexible one[.]" *Id.* at 580.

Six years after *Daubert*, the Supreme Court decided *Kumho Tire* and, importantly, expanded *Daubert*'s core holding to non-scientific expertise that is technical or based on some specialized knowledge. *Kumho Tire*, 526 U.S. at 148–49. Also importantly, the *Kumho Tire* Court retreated from the *Daubert* factors and held that, although a trial court "may consider" the *Daubert* factors "when doing so will help determine that testimony's reliability[,]" the ultimate test of reliability is "'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141. Thus, regardless of the nature of expert testimony, Rule 702 establishes a standard of evidentiary reliability requiring "a valid … connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 149 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). "And whe[n] such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id*. (quoting *Daubert*, 509 U.S. at 592).

Accordingly, the current version of Rule 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.  Thus, in order for an expert witness's opinion to be admissible under Rule 702, "(1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the

testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony must be reliable, as assessed by its factual basis and the sufficiency of its principles and methods*." DayCab Co., Inc. v. Prairie Tech.*, LLC, 67 F.4th 837, 853 (6th Cir. 2023) (internal quotations omitted).

**2.**

First, at this pretrial stage, it appears Agent McGraw is qualified to serve as an expert because of her knowledge, training, and experience concerning state and federal drug investigations, generally, and drug trafficking in north-eastern Michigan, specifically. Agent McGraw has "worked in drug law enforcement for over [ten] years," the last five-and-a-half years at the federal level. ECF No. 114 at PageID.1217. Prior to her work as an ATF Special Agent, McGraw worked for two years as a BAYANET Detective. *Id.* "She has investigated well over 100 drug felony offenses, has coordinated informants[,] and has interviewed hundreds of individuals involved in drug trafficking, including defendants, informants, and cooperators." *Id.* at PageID.1217–18. Agent McGraw has further made more than 30 undercover purchases of illegal drugs and has executed "countless" drug search warrants. *Id.* at PageID.1218. Suffice to say, Agent McGraw is well qualified to testify about the *modus operandi* of street-level drug traffickers, and is qualified to testify about drug trafficking in Saginaw, Michigan, specifically.

Second, Agent McGraw's proffered testimony is relevant as it will assist the trier of fact. Defendant argues to the contrary because, in his view, this case involves a "simple traffic stop" and therefore "a jury is perfectly capable of understanding what did or did not happen without the aid of" Agent McGraw's testimony. ECF No. 123 at PageID.1285. But the Sixth Circuit has repeatedly held that the "methods and techniques employed in an area of criminal activity" and the "'*modus operandi*' of particular crimes" are appropriate fodder for expert testimony by law

enforcement agents because such topics are generally "beyond the understanding of the average layman." *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (quoting *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir.1990); *see also United States v. Montgomery*, 491 F. App'x 683, 690 (6th Cir. 2012) *United States v. Ham*, 628 F.3d 801, 805 (6th Cir.2011) (holding that a federal agent's expert testimony regarding the characteristics of crack cocaine and the methods of its distribution was admissible and "highly relevant" in helping the jury resolve the central issue of whether the defendant possessed crack cocaine with intent to distribute); *U.S. v. Swafford*, 385 F.3d 1026, at 1030 (6th Cir.2004) ("Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman.")

Lastly, at this pretrial stage, it appears that Agrent McGraw's testimony would be sufficiently reliable, and Defendant has not shown that the testimony would be "clearly" unreliable to justify granting his Motion *in Limine* to exclude. *See United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). Defendant argues that Agent McGraw's proffered testimony is unreliable because she has no resume or CV and because "there has been no peer review, nor public review" of her opinions and "[t]here is no data to corroborate the potential rate of error[.]" ECF No. 123 at PageID.1284. But Agent McGraw is not a scientist. She is a law enforcement officer. And although the *Daubert* factors recited by Defendant may be relevant when assessing the reliability of proffered *scientific* expert testimony, they are not applicable here. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Indeed, Agent McGraw's proffered testimony—concerning the *modus operandi* of street-level drug traffickers in Saginaw, Michigan—is likely reliable assuming her opinions were formed

throughout her over ten years of experience as a drug enforcement agent. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008) ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."). But the Government will be left to meet its Rule 702 burden at trial if it seeks to qualify Agent McGraw as an expert and elicit such testimony.

In sum, Defendant has not shown that Agent McGraw's proffered expert opinion testimony is "clearly inadmissible" under Rule 702. *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). On the contrary, at this pretrial stage, it appears that Agent McGraw is sufficiently qualified to testify as an expert in drug enforcement and trafficking; and it appears her testimony concerning the *modus operandi* of local drug traffickers would be relevant in assisting the jury and sufficiently reliable.

### B. Defendant's Rule 704 Challenge

Defendant next argues that Agent McGraw's proffered testimony is inadmissible under Federal Rule of Evidence 704 for containing an opinion on the ultimate issue. ECF No. 123 at PageID.1285. But an opinion concerning the *modus operandi* of particular crimes is not an opinion on the ultimate issue in a criminal case, so Defendant's Motion *in Limine* will be denied on this ground, too.

Federal Rule of Evidence 704 ensures that experts will not testify as to the ultimate issue in a criminal case. Specifically, Rule 704 provides that, although "an opinion is *not* objectionable just because it *embraces* an ultimate issue[,]" FED. R. EVID. 704(a) (emphasis added), "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.

Those matters are for the trier of fact alone." FED. R. EVID. 704(b). Accordingly, "opinions that draw the ultimate conclusion regarding whether a defendant had the requisite intent to commit the crime charged are inadmissible, but opinions from which the jury can infer intent are admissible." *United States v. Gallion*, 257 F.R.D. 141, 155 (E.D. Ky. 2009), *aff'd sub nom. United States v. Cunningham*, 679 F.3d 355 (6th Cir. 2012).

Defendant argues that Agent McGraw's testimony should be excluded under Rule 704 because, by testifying that rental cars and firearms are frequent within the drug trafficking trade, Agent McGraw "will be offering an opinion that Defendant . . . had the intent to conspire" to possess and distribute drugs with the other occupants of the rental car on September 27, 2021. ECF No. 123 at PageID.1285. Not so. The Sixth Circuit has repeatedly held that law enforcement officers can testify about "conduct that would be consistent with an intent to distribute" controlled substances without running afoul of Rule 704. *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004); *see also United States v. Dunnican*, 961 F.3d 859, 876 (6th Cir. 2020) (affirming district court's admission of expert law enforcement officer's testimony that marijuana discovered in defendant's car appeared to be "packed for resale" and holding this was not an opinion on the ultimate issue of Defendant's intent to distribute); *United States v. Montgomery*, 491 F. App'x 683, 690 (6th Cir. 2012).

Accordingly, at this pretrial stage, Agent McGraw's proffered expert testimony concerning the *modus operandi* of drug traffickers in Saginaw, Michigan, is not "clearly inadmissible" under Rule 704. *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). So, Defendant's Motion *in Limine* will be denied. To the extent Defendant believes Agent McGraw testifies on the ultimate issue of Defendant's mental state at trial, he is free to object accordingly.

Before concluding, it is worth noting the limited reach of this Opinion and Order. Because Defendant has not shown that Agent McGraw's proffered expert testimony is clearly inadmissible, this Court will deny Defendant's Motion *in Limine*. Further, this Court has not yet qualified Agent McGraw as an expert, nor is this Court concluding that her trial testimony will be admissible. The Government must meet all applicable evidentiary burdens at trial, and Defendant is free to object to the extent he believes any evidence is inadmissible.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion *in Limine* to Exclude the Expert Testimony of Special Agent Kyle McGraw, ECF No. 123, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion to Conduct Hearing on his Motion *in Limine*, ECF No. 173, is **DENIED AS MOOT.**

**This is not a final order and does not close the above-captioned case.**

Dated: January 18, 2024                                  s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judged