UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DERWIN ANDREWS,

    Defendant.
_____/

Case No. 1:22-cr-20114-2

Honorable Thomas L. Ludington
United States District Judge

# OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO QUASH PURPORTED SUBPOENA; QUASHING PURPORTED SUBPOENA; AND DENYING DEFENDANT'S MOTION FOR SUBPOENA

In October 2023, Defendant Derwin Andrews's Counsel served a purported subpoena on the Michigan State Police (MSP) without this Court's knowledge or approval and demanded that MSP deliver—directly to Defense Counsel's office—the names, daily activity logs, and arrest reports of all MSP officers who were working in the area and at the time of Defendant's September 27, 2021 stop and arrest. The Government filed a Motion to Quash but provided all information Defendant sought as a professional courtesy. In November 2023, Defendant filed a Motion to subpoena MSP again, this time demanding that MSP produce the names, daily activity logs, and arrest reports of *all* officers that the Secure Cities Partnership program allocated to the City of Saginaw. Because the October 2023 Purported Subpoena is procedurally improper and because Defendant already has the sought-after information, it will be quashed. Because the Subpoena sought in November 2023 seeks irrelevant information as part of a fishing expedition, Defendant's Motion will be denied.

I.

On September 27, 2021, Defendant Derwin Andrews was riding in the front passenger seat of a 2001 Chevy Equinox in Saginaw, Michigan, alongside Codefendant Morgan—the driver—and Codefendant Moore—who was seated in the rear passenger seat, behind Defendant. *See* ECF No. 130 at PageID.1322. Importantly, although the Equinox was a rented vehicle, Defendant, Morgan, and Moore were not identified by the rental agreement as authorized to drive or possess the car. *Id.* at PageID.1326. At 10:45 PM, Michigan State Police (MSP) Trooper Cody Siterlet conducted a traffic stop after he saw the Equinox cross the median line while driving, in violation of MCLA § 257.649. *Id.* at PageID.1322. The traffic violation can be viewed on Trooper Siterlet's dashcam video. *See* Gov't's Resp. Ex. 2, ECF No. 125, 0:19–0:30 [hereinafter "Dashcam"].

Once pulled over, Morgan could not produce a valid driver's license. Dashcam at 1:15, 2:08–2:20. Accordingly, Trooper Siterlet asked Morgan to step out of the car, placed him in handcuffs, and informed him that he was being detained. *Id.* at 2:20–2:54. Once Morgan was out of the car and in handcuffs, Trooper Siterlet frisked him and asked if there was "anything in the ride [he] should be worried about." *Id.* at 3:32– 4:20. During the pat down, Trooper Siterlet uncovered a large amount of cash in Morgan's pocket which Morgan indicated he had won at a casino and was worth "about $4,500." *Id.* at 4:20–5:13; *see also* ECF No. 130 at PageID.1323, 1327 (noting the seizure of $4,760 from Morgan's person). After Trooper Siterlet counted the money, he placed it back in Morgan's pocket, and continued the frisk. Dashcam at 4:20–5:13. Trooper Siterlet then asked Morgan to "have a seat" in the patrol car "for a second." *Id.* at 6:17–6:20. Once in the patrol car, Morgan told Trooper Siterlet that he did not consent to a search of the rented Equinox. *Id.* at 6:35–6:46 ("I didn't say you could check it."). Trooper Siterlet then explained that, since Morgan did not own the Equinox and could not provide a license, the Equinox

would likely be towed from the scene and would likely be searched. *Id.* at 6:55–7:30. Morgan responded, "just have it towed." *Id.* at 7:29–7:31.

While Morgan remained in the patrol car, Trooper Siterlet approached the rear passenger door, opened it, and asked Moore to step out of the Equinox. *Id.* at 7:38–7:45. As he was asking Moore to step out, Trooper Siterlet observed a tan pistol at Moore's feet, under the front passenger seat. ECF No. 130 at PageID.1323. Trooper Siterlet directed Moore to not move and directed Defendant, still sitting in the front passenger seat, to put his hands on the dash. Dashcam at 7:46–7:56. The other responding MSP Trooper removed Moore from the rear passenger seat, placed him in handcuffs, frisked him, and sat him on the hood of the patrol car. *Id.* at 8:09–9:11. Trooper Siterlet then removed Defendant from the car, placed him in handcuffs, and escorted him to a nearby tree for a protective frisk. *Id.* at 9:38–11:01.

In addition to (1) the tan 9mm Glock semi-automatic handgun in the rear passenger seat, a subsequent search of the Equinox's middle console revealed (2) a .45 caliber modified fully automatic Glock 21 with a laser sight and a loaded 40-round drum magazine, (3) 3.94 grams of fentanyl, and (4) .99 grams of crack cocaine. *See* ECF Nos. 130 at PageID.1323, 1327–28; 107 at PageID.1198; 125 at PageID.1291. Defendant had an additional (5) 2.62 g of crack cocaine in his pocket. *See* ECF No.107 at PageID.1198; 128 at PageID.1212; 130 at PageID.1326. Importantly, the Government asserts that Defendant's fingerprints were located on the gun found at Moore's feet, ECF Nos. 125 at PageID.1291; 128 at PageID.1314, despite the fact that Trooper Siterlet indicated in his incident report that it would not have been possible for the gun found at Moore's feet to have passed from the front to the back of the Equinox under Defendant's seat. ECF No. 130 at PageID.1323.

Accordingly, on March 2, 2022, Defendant, Moore, and Morgan were named as coconspirators in a seven-count Indictment. ECF No. 1. On July 20, 2022, a Second Superseding Indictment was filed, charging all three with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I) and possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). ECF No. 48 Counts III through VII of the Second Superseding Indictment charged Moore, Morgan, or Defendant individually or in groups of two with various other firearm and drug offenses. *See id.*

In October 2022, the undersigned presided over Moore's jury trial, which resulted in a jury finding Moore guilty as charged. ECF No. 75 at PageID.354. Moore was sentenced to 100 months' total imprisonment. *Id.* at PageID.355. At the time of Moore's trial, Morgan and Defendant remained at-large. Indeed, Defendant's arrest warrant was not executed until April 25, 2023. ECF No. 96.

After Defendant's arrest, a Third Superseding Indictment was filed charging him with conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1) (Count I); possession with intent to distribute controlled substances/aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); possession of a firearm in furtherance of a drug trafficking crime/aiding and abetting, 18 U.S.C. § 924(c)(1)(A) and (B)(iii) 18 U.S.C. § 2 (Count III); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count V). ECF No. 107.

On October 17, 2023, the MSP was served with a purported Rule 17(c) Subpoena (the "Purported Subpoena") without this Court's knowledge or approval. *See* ECF No. 156 at

PageID.1440. The Purported Subpoena was filled out by Defense Counsel and demanded that the MSP produce—to Defense Counsel's offices:

> "[The n]ames of all [MSP] Troopers and MSP employees affiliated with said police action taking place on 19th Steet between Lapeer and Ja[n]es Streets, Buena Vista Township, Saginaw County, MI and all daily activity logs, arrest reports, [and] inventory reports for September 27, 2021 by said identified troopers and employees[.]"

ECF No. 156-2. In response, that same day, the Government filed a Motion to Quash the Purported Subpoena, arguing it was both procedurally flawed and overly broad on the merits. ECF No. 156. But—importantly—the Government also provided Defense Counsel with all information sought in the Purported Subpoena as a professional courtesy. ECF Nos. 160 at PageID.1471; 176 at PageID.1565.

The next month, Defendant filed a Motion seeking an additional Rule 17(c) subpoena compelling MSP to produce:

> [The n]ames of *all* [MSP] Troopers and MSP employees *assigned to* assist crime detection and enforcement in Saginaw *pursuant to the Secure Cities Partnership*[1] on September 27, 2021, between 9:30 am and 10:30 am, including those working on 19th Street between Lapeer and Ja[n]es Streets, Buena Vista Township, Saginaw County, MI that day, together with any and all assignment logs/record, and daily activity logs, generated by said troopers and employees.

ECF No. 174 at PageID.1544 (emphasis added). The Government responded that this subpoena— although procedurally proper—should be denied on the merits because the information sought is irrelevant and inadmissible, and because the subpoena is a "mere fishing expedition which seeks

---

[1] The Secure Cities Partnership was proposed by former Governor Rick Snyder in 2012 to combat increased violence in Michigan cities like Saginaw by, among other initiatives, coordinating teams of law enforcement officers to provide directed patrols and investigative resources in identified high-crime communities. *See* Bob Johnson, *Michigan State Police Get Results Employing Tactics in Saginaw Through Secure Cities Partnership*, MLIVE (May 8, 2013, 5:20 PM), https://www.mlive.com/news/saginaw/2013/05/michigan_state_police_get_resu.html [https://perma.cc/DSZ6-AX35]. In other words, the Secure Cities Partnership increased the number of officers patrolling in identifiably violent Michigan cities. *See id.*

to expand the scope of discovery in this case." ECF No. 176 at PageID.1566–68. Defendant filed his Reply in support on December 8, 2023. ECF No. 178.

An evidentiary hearing was held on both the Government's Motion regarding the October 2023 Purported Subpoena and Defendant's November 2023 Motion to Subpoena on January 2, 2024.

## II.

"Federal Rule of Criminal Procedure 17(c) authorizes the issuance of subpoenas duces tecum in federal criminal proceedings." *United States v. Mills*, No. 16-CR-20460, 2019 WL 76869, at *2 (E.D. Mich. Jan. 2, 2019). A subpoena issued pursuant to this rule "may order the witnesses to produce any books, papers, documents, data, or other objects the subpoena designates." FED. R. CRIM. P. 17(c)(1). Further, the Rule provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence" and may "permit the parties and their attorneys to inspect all or part of" those items upon arrival. *Id.*

The decision to enforce or quash a subpoena will be disturbed on appeal only when the action was clearly arbitrary or without support in the record. *United States v. Vassar*, 346 F. App'x 17, 24 (6th Cir. 2009) (citing *United States v. Hughes*, 895 F.2d 1135, 1145 (6th Cir. 1990)).

## III.

At this juncture, the issue is twofold: (1) whether Defendant's October 2023 Purported Subpoena—demanding that MSP produce the names, reports, and daily logs of MSP Troopers working in the area Defendant was stopped and arrested on September 27, 2021—should be quashed; and (2) whether Defendant's November 2023 Motion for Subpoena—seeking the names, reports, and daily logs of *all* Secure Cities Partnership Troopers in Saginaw on September 27, 2021—should be granted. Each will be discussed in turn.

### A. Government's Motion to Quash Defendant's Purported Subpoena

Defendant's October 2023 Purported Subpoena is procedurally improper. District courts within the Sixth Circuit are free to interpret for themselves the contours of Rule 17(c) and to determine, on a court-by-court basis, how they will administer or oversee their subpoena power through standing orders or local rules. *United States v. Llanez-Garcia*, 735 F.3d 483, 500 (6th Cir. 2013). Effective July 1, 2017, this District's Local Rules provide that "[a] party seeking a subpoena for books, papers, documents, data, or other objects under FED. R. CRIM. P. 17(c) in advance of trial *must* seek prior approval from the court" and require any Rule 17 Subpoena to "state that the request items must be returned to the chambers of the assigned judge." L. Cr. R. 17.1(b). Defendant did not seek prior approval from this Court before serving his October 2023 Purported Subpoena on the MSP and the Purported Subpoena requested the items be delivered directly to Defense Counsel's offices, instead of this Court. ECF No. 156-2. Accordingly, the Government's Motion to Quash will be granted.[2] *See United States v. Raheja*, No. 1:19-CR-559-4, 2022 WL 2870902, at *2 (N.D. Ohio July 20, 2022) (setting aside subpoena that demanded document production "away from court—such as the defense attorney's office" in violation of a similar local rule); *United States v. Farmer*, No. 1:14-CR-362, 2015 WL 1471965, at *3 (N.D. Ohio Mar. 31, 2015) (denying motion for subpoena which did not comply with similar local rule).

---

[2] Importantly, Defendant has already obtained all information sought in the October 2023 Purported Subpoena because the Government provided the names, daily logs, and reports of all MSP Troopers and employees working in the area Defendant was stopped and arrested in on September 27, 2021, as a "professional courtesy." *See* ECF Nos. 160 at PageID.1471; 176 at PageID.1565. Thus, as a practical matter, the subpoena is no longer necessary.

### B. Defendant's November 2023 Motion to Subpoena

Defendant's November 2023 Motion for a Subpoena—although procedurally proper—will be denied for seeking irrelevant information as part of a "fishing expedition."

The Supreme Court has emphasized that "Rule 17(c) is not meant to provide an additional way to secure pretrial discovery." *United States v. Llanez-Garcia*, 735 F.3d 483, 494 (6th Cir. 2013). Accordingly, a defendant seeking a Rule 17(c) subpoena must show: (1) the items sought are evidentiary and relevant; (2) the items sought may not by otherwise procurable through due diligence before trial; (3) the defendant cannot properly prepare for trial without such pre-trial production and inspection; and (4) the application is in good faith and not a "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699 (1974). Further, "[t]he moving party must also show that the requested materials are admissible, as well as identify and describe the documents with sufficient specificity." *Mills*, 2019 WL 76869, at *2 (citing *Nixon*, 418 U.S. at 700). Notably, "[t]his latter specificity requirement ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up, and is often the most difficult hurdle to overcome." *Id.* (internal quotations omitted).

Here, Defendant seeks to subpoena the MSP for the names, daily logs, and assignment reports of all law enforcement officials that the Secure Cities Partnership program allocated to assist law enforcement efforts throughout all of Saginaw, Michigan. ECF No. 174 at PageID.1544. How is this information relevant? Defendant cites a 2021 Secure Cities Partnership Report which states that the program allocated 23 law enforcement officers to Saginaw, ECF No. 174-1 at PageID.1548, and contends that the information is relevant because these officers "have personal knowledge of events transpiring before and during [Defendant's] traffic stop[.]" ECF No. 174 at PageID.1545. But Defendant has not shown that *any* of these additional officers were working on

September 27, 2021—let alone in the area and at the time that Defendant was stopped and arrested. And, importantly, the Government *already provided* Defendant with the names, daily logs, arrest reports, and inventory reports of the MSP Troopers and employees that were working or patrolling at the time and in the area of Defendant's traffic stop and arrest. ECF Nos. 160 at PageID.1471; 176 at PageID.1565. Any additional information is irrelevant.[3]

Defendant's subpoena request reflects his contention that MSP is conspiring against him and only stopped him because of his race. Indeed, Defendant maintains that multiple—unknown and unidentified— MSP Troopers saw Defendant and Codefendants were "driving while black,"[4] and accordingly called ahead to Trooper Siterlet and instructed him stop the rental car and detain or arrest Defendant and Codefendants. *See*, *e.g.*, ECF Nos. 121 at PageID.1233–34; 134 at PageID.1343; 156 at PageID.1441; 174 at PageID.1541, 1545. But Trooper Siterlet testified under oath that he—and he alone—decided to stop the rental car that Defendant was a passenger in after observing the car commit multiple traffic violations, all of which are clearly visible on the dashcam recording. *See* Dashcam at 0:19–0:30. And Defense Counsel conceded that, despite months of discovery and the Government's significant disclosures, he has no evidence that even slightly corroborates his client's claims.[5] Thus, Defendant's request for a subpoena to obtain information of officers wholly unconnected to his stop and arrest "to see what may turn up" is precisely the kind fishing expedition prohibited by Rule 17(c). *See Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, (1951); *see also United States v. Peterson*, No. 20-20448, 2022 WL 9914428, at *3

---

[3] Defendant also argues "[t]he subpoena seeks both exculpatory evidence as well as impeachment evidence of critical fact and law enforcement witnesses permitted under *Brady v. Maryland* . . . and *Giglio v. United States*[.]" ECF No. 178 at PageID.1580. But, at this pretrial stage, "the government typically is the sole judge of what evidence in its possession is subject to disclosure" under *Brady*. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

[4] Defense Counsel made this claim on the record at the October 18, 2023 evidentiary hearing.

[5] Defense Counsel made this concession on the record at the January 2, 2024 evidentiary hearing.

(E.D. Mich. Oct. 17, 2022) (denying subpoena when defendant's request was made simply "with the hope of discovering additional information beyond what the Government has . . . already provided). Thus, Defendant's Motion for a Subpoena will be denied.

### IV.

Accordingly, it is **ORDERED** that the Government's Motion to Quash Defendant's Rule 17(c) Subpoena, ECF No. 156, is **GRANTED.**

Further, it is **ORDERED** that the Purported Subpoena served on the Michigan State Police on October 17, 2023, ECF No. 156-2, is **QUASHED.**

Further, it is **ORDERED** that Defendant's Motion for Subpoena, ECF No. 174, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

Dated: January 18, 2024                                s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judged