UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                             Case No. 1:22-cr-20114-2

v.                                       Honorable Thomas L. Ludington
                                             United States District Judge

DERWIN ANDREWS,

               Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

       Defendant Derwin Andrews was riding in the front passenger seat of a rented Equinox in

Saginaw, Michigan on September 27, 2021 when Trooper Cody Siterlet of the Michigan State

Police (MSP) observed the Equinox violate two provisions of the Michigan Motor Vehicle Code.

Accordingly, at 10:45 PM, Trooper Siterlet pulled the Equinox over. The driver—Codefendant

Devon Morgan—did not have a driver's license but had nearly $5,000 in cash on his person,

despite being unemployed. And the rental agreement did not authorize Defendant, Codefendant

Morgan, or Codefendant Cortiyah Moore—seated in the back passenger seat—to drive or possess

the car. When Morgan denied consent to search the rented Equinox, Trooper Siterlet began

directing its occupants out, in preparation to have the car towed. As Trooper Siterlet opened the

rear passenger door, he immediately saw a Glock pistol on the floor, at Codefendant Moore's feet

below Defendant's seat. Accordingly, Trooper Siterlet and another responding MSP Trooper

detained and frisked all occupants and searched the car for any other firearms. After this search

revealed an additional modified fully-automatic Glock with a drum magazine, and a significant

amount of packaged fentanyl and crack cocaine, Defendant and Codefendants were arrested.

Defendant filed a Motion to Suppress evidence from the search of the Equinox and argues (1) Trooper Siterlet did not have probable cause to effectuate the initial traffic stop because the traffic violations he observed were "de minimis" and because the stop and was pretextual; (2) Trooper Siterlet did not have probable cause to extend the stop and detain Defendant before his arrest; and (3) Trooper Siterlet did not have probable cause to arrest Defendant.. But, as explained below, every stage of Defendant's encounter with the MSP on September 27, 2021 accorded with the Fourth Amendment. Defendant's Motion to Suppress will be denied.

## I.

### A.

On September 27, 2021, Defendant Derwin Andrews was riding in the front passenger seat of a 2021 Chevy Equinox in Saginaw, Michigan, alongside Codefendant Devon Morgan—the driver—and Codefendant Cortiyah Moore—who was seated in the rear passenger seat, behind Defendant. *See* ECF No. 130 at PageID.1322. Importantly, the Equinox was rented but Defendant, Morgan, and Moore were not identified by the rental agreement as authorized to drive or possess the car. *Id.* at PageID.1326. At 10:45 PM, MSP Trooper Cody Siterlet conducted a traffic stop after he saw the Equinox cross the stop line at an intersection and cross the median line while driving on a two-way road. *Id.* at PageID.1322. The traffic violations can be viewed on Trooper Siterlet's dashcam video. *See* Gov't's Resp. Ex. 2, ECF No. 125, 0:19–0:30 [hereinafter "Dashcam"].

Once pulled over, Codefendant Morgan informed Trooper Siterlet that the group was "just chilling" and seemingly showed Trooper Siterlet the "rental agreement." Dashcam at 1:00–1:15. When asked for identification, Codefendant Morgan could not produce a valid driver's license. *Id.* at 1:15, 2:08–2:20. Accordingly, Trooper Siterlet asked Morgan to step out of the car, placed him

in handcuffs, and told him he was being detained. *Id.* at 2:20–2:54. Once Morgan was out of the

car and in handcuffs, Trooper Siterlet frisked him and asked if there was "anything in the ride [he]

should be worried about." *Id.* at 3:32– 4:20. During the pat down, Trooper Siterlet uncovered a

large amount of cash in Morgan's pocket which Morgan indicated he had won at a casino and was

worth "about $4,500." *Id.* at 4:20–5:13; *see also* ECF No. 130 at PageID.1323, 1327 (noting the

seizure of $4,760 from Morgan's person and that Morgan told Trooper Siterlet he was

unemployed). After Trooper Siterlet counted the money, he placed it back in Morgan's pocket,

and continued the frisk. Dashcam at 4:20–5:13. Trooper Siterlet then asked Morgan to "have a

seat" in the patrol car "for a second." *Id.* at 6:17–6:20. Once in the patrol car, Morgan told Trooper

Siterlet that he did not consent to a search of the Equinox. *Id.* at 6:35–6:46 ("I didn't say you could

check it."). Trooper Siterlet explained that, since Morgan did not own the Equinox and could not

provide a driver's license, the car would be towed from the scene and subject to an inventory

search. *Id.* at 6:55–7:30. Morgan responded, "just have it towed." *Id.* at 7:29–7:31.

Accordingly, while Morgan remained in the patrol car, Trooper Siterlet went back to the

Equinox to direct its other occupants out. *Id.* at 7:38–7:45. As Trooper Siterlet opened the rear

passenger door to ask Codefendant Moore to step out, Trooper Siterlet saw a tan pistol on the floor

at Moore's feet, under Defendant's front passenger seat.[1] ECF No. 130 at PageID.1323. Trooper

Siterlet directed Moore to not move and directed Defendant, still sitting in the front passenger seat,

to put his hands on the dash. Dashcam at 7:46–7:56. The other responding MSP trooper removed

---

[1] Notably, Trooper Siterlet noted in his incident report that electrical and mechanical equipment under Defendant's front-passenger seat would have prevented the gun found at Codefendant Moore's feet from passing from the front to the back of the car, under Defendant's seat. ECF No. 130 at PageID.1323. However, the Government asserts that Defendant's fingerprints were ultimately recovered from the gun found at Codefendant Moore's feet. ECF Nos. 125 at PageID.1291; 128 at PageID.1314.

Moore from the rear passenger seat, placed him in handcuffs, frisked him, and sat him on the hood of the patrol car. *Id.* at 8:09–9:11. Trooper Siterlet then removed Defendant from the car, placed him in handcuffs, escorted him to a nearby tree for a protective frisk. *Id.* at 9:38–11:01; *see also* ECF No. 130 at PageID.1323.

In addition to (1) the tan 9mm Glock semi-automatic handgun in the rear passenger seat, a subsequent search of the Equinox's middle console revealed (2) a .45 caliber modified fully automatic Glock 21 with a laser sight and a loaded 40-round drum magazine, (3) 3.94 grams of fentanyl, and (4) .99 grams of crack cocaine. *See* ECF Nos. 130 at PageID.1323, 1327–28; 107 at PageID.1198; 125 at PageID.1291. Defendant had an additional (5) 2.62 grams of crack cocaine in his pocket. *See* ECF No.107 at PageID.1198; 128 at PageID.1212; 130 at PageID.1326.

**B.**

Accordingly, on March 2, 2022, Defendant, Moore, and Morgan were named as coconspirators in a seven–count Indictment, ECF No. 1, and warrants were issued for their arrests. ECF Nos. 2; 3; 4. In October 2022, the undersigned presided over Codefendant Moore's jury trial, which resulted in a jury finding Moore guilty as charged. ECF No. 75 at PageID.354. Moore was sentenced to 100 months' total imprisonment. *Id.* at PageID.355. At the time of Moore's trial, both Defendant and Codefendant Morgan remained at large. Defendant conceded he was aware of the federal indictment as early as "October or November of 2022" but, despite having "every intent to walk [him]self into custody[,]" his arrest warrant was not executed until April 28, 2023 because he "wanted to get the holidays out of the way." ECF No. 122-1 at PageID.1261. Codefendant Morgan was arrested in Florida on January 24, 2024. *See* ECF No. 198.

The Third Superseding Indictment charges Defendant with conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. §§ 846 and

841(a)(1) (Count I); possession with intent to distribute controlled substances/aiding and abetting in violation of  21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); possession of a firearm in furtherance of a drug trafficking crime/aiding and abetting in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(iii) 18 U.S.C. § 2 (Count III); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count V). *See* ECF No. 107.

On August 15, 2023, Defendant filed a Motion to Suppress all evidence seized from the September 27, 2021 traffic stop because, Defendant argues, the stop was pretextual and his detention and arrest lacked probable cause. *See* ECF No. 121. The Government responded that Defendant lacks "standing" to challenge the traffic stop and both the stop and Defendant's detention and arrest were supported by probable cause. ECF No. 125.

This Court scheduled a suppression hearing for October 3, 2023, ECF No. 124, but the Government's witness—Trooper Siterlet—was unavailable to testify that day due to a training conflict. Nevertheless, Counsel for both the Government and Defendant met in chambers and conferred off the record, as Defense Counsel had recently been retained and filed an appearance.[2] *See* ECF No. 108. The suppression hearing was rescheduled for October 18, 2023. ECF No. 141. At the conclusion of the October 18, 2023 hearing, Defense Counsel needed additional time to cross examine Trooper Siterlet, so this Court continued the suppression hearing to November 8, 2023. ECF No. 157. In the meantime, this Court directed the Parties to file supplemental briefing because Defendant raised new arguments in support of suppression. ECF No. 157 at PageID.1457 (noting Defendant argued (1) the alleged traffic violations were "de minimis" and did not create

---

[2] Notably, Defendant's retained Counsel—who filed the instant Motion to Suppress—has since filed a Motion to Withdraw. ECF No. 193. This Court accordingly ordered the appointment of a Federal Community Defender to represent Defendant. *See* ECF No. 199. Until a federal defender accepts appointment and indicates he or she has received all discovery from Defendant's prior retained Counsel, Defendant's Motion to Withdraw, ECF No. 193, will remain pending.

probable cause to stop the car, and (2) the stop concluded after Trooper Siterlet removed Codefendant Morgan from the Equinox); *see also* ECF Nos. 158 (Defendant's first supplemental brief); 162 (Government's first supplemental brief).

At the conclusion of the November 8, 2023 continued suppression hearing, Defense Counsel needed more time to complete his cross examination of Trooper Siterlet and indicated that he wanted Defendant to testify. *See* ECF No. 196 at PageID.1769–70. Accordingly, this Court further continued the suppression hearing to December 14, 2023. ECF No. 171. And, at the conclusion of the December 14 suppression hearing, "[b]ecause four months ha[d] passed since the filing of Defendant's Motion to Suppress, and because additional information and arguments [were] presented throughout the continued suppression hearing," this Court directed the Parties to file *optional* supplemental briefing to further support or clarify their suppression arguments. ECF No. 181 at PageID.1609–10. *See also* ECF Nos. 188 (Government's second supplemental brief); 191 (Defendant's second supplemental brief).

## II.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no [w]arrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. When a search or seizure violates the Fourth Amendment, a defendant may suppress tainted evidence from trial under the "fruit of the poisonous tree" doctrine, absent attenuation or exception. *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011); *see also United States v. Waide*, 60 F.4th 327, 338 (6th Cir. 2023) ("Courts are required to suppress evidence that is directly or indirectly 'the tainted fruit' of unlawful government conduct.'" (quoting *Nix v. Williams*, 467 U.S. 431, 441 (1984))).

## III.

### A.  Standing

As a threshold matter, this Court begins by analyzing whether Defendant has "standing" challenge the traffic stop, his detention, and his arrest on Fourth Amendment grounds. Because these stages of the September 27, 2021 encounter are all seizures under the Fourth Amendment in which Defendant was not reasonably free to leave, he has "standing" to claim each stage violated the Fourth Amendment and thus warrants suppression.

The term "standing" is somewhat imprecise in this Fourth Amendment context. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (noting that, when determining whether a defendant can show a violation of his or her Fourth Amendment rights, "the 'definition of those rights is more properly placed in the purview of substantive Fourth Amendment law than within that of standing.'" (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)). But the Sixth Circuit continues to use the term "standing" to refer to whether a Defendant has an objectively reasonable expectation of privacy in the place searched or the things seized to assert a cognizable Fourth Amendment challenge. *See United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). The suppression movant has the burden of establishing their standing to assert a Fourth Amendment violation. *Id.*; *see also United States v. Evers*, 669 F.3d 645, 651 (6th Cir. 2012).

First, Defendant has standing challenge to challenge the September 27, 2021 traffic stop. The Government argues to the contrary because, in its view, Defendant is an unauthorized rental car passenger and, thus, lacks a reasonable expectation of privacy in the car's contents. ECF Nos. 125 at PageID.1294–95; 162 at PageID.1485–87 But the Government's argument conflates the challenged *stop* of the car—a Fourth Amendment seizure—with the subsequent *search* of the car, which Defendant does not challenge. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012)

("An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourt Amendment." (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir.2008)). True, as the Government highlights, the Sixth Circuit has recognized that rental-car passengers who are unauthorized to drive the rental car—like Defendant—lack standing to contest the rental car's *search* on Fourth Amendment grounds. *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015). But Defendant does not challenge the constitutionality of the car's search. He instead challenges Trooper Siterlet's decision to *stop* the Equinox in the first instance. ECF No. 121 at PageID.1233. And a passenger plainly "has standing to challenge, pursuant to the Fourth Amendment, [an] officer[']s[] stop of a vehicle in which he is riding[,]" *United States v. Jones*, 147 F. Supp. 2d 752, 757 (E.D. Mich. 2001), even when that vehicle is rented and when that passenger is unauthorized to drive or possess the rental car. *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015) (noting that, although an unauthorized rental-car passenger lacks standing to challenge the vehicle's *search* on Fourth Amendment grounds, "he may nevertheless contest the legality of his detention" because "[p]assengers have standing to contest the lawfulness of their *seizure*[.]" (emphasis in original)). Thus, Defendant has standing to challenge the September 27, 2021 traffic stop. *See Brendlin v. California*, 551 U.S. 249, 257 (2007) ("A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, diverting both from the stream of traffic to the side of the road, and the police activity that normally amounts to intrusion on privacy and personal security does not . . . distinguish between passenger and driver." (internal quotations omitted)).

For similar reasons, Defendant also has standing to argue his subsequent detention and arrest—further seizures of Defendant's person—also violated Fourth Amendment. *See Bah*, 794 F.3d at 626; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968). The Government does not disagree. *See* ECF No. 125 at PageID.1294–95 (arguing Defendant lacked standing to challenge the traffic stop

only). Having established Defendant's standing, this Court turns to the merits of Defendant's Motion.

### B.  The Traffic Stop

Starting with the stop, Defendant first argues suppression is warranted because Trooper Siterlet's traffic stop was pretextual and lacked probable cause in violation of the Fourth Amendment. But Trooper Siterlet had sufficient probable cause to stop the Equinox because he personally observed what he reasonably believed to be at least two violations of the Michigan Motor Vehicle Code, both of which are observable on his dashcam recording.

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir.2008)); *see also United States v. Lawrence*, 425 F. Supp. 3d 828, 832 (E.D. Mich. 2019) ("[A] police officer effectively seizes everyone in the vehicle, the driver and all passengers[,] during a traffic stop." (internal quotations omitted)). Accordingly, the Fourth Amendment requires a police officer "'possess either probable cause of a civil infraction or reasonable suspicion of criminal activity' to initiate a traffic stop." *Lawrence*, 425 F. Supp. at 832 (quoting *U.S. v. Lyons*, 687 F.3d. 754, 763 (6th Cir. 2012)).

The test for probable cause is "not reduceable to 'precise definition or quantification.'" *Smith v. City of Wyoming*, 821 F.3d 697 (6th Cir. 2016), *as amended* (May 18, 2016) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366 at 371, (2003))). Instead, probable cause is a "'practical and common-sensical standard' based on 'the totality of the circumstances.'" *Id.* (quoting *Harris*, 568 U.S. at 243). Probable cause is satisfied when the facts and circumstances within an officer's knowledge are sufficient "to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States*

*v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (quoting *United States v. Davis* 430 F.3d 345, 352 (6th Cir.2005) and *Brinegar v. United States*, 388 U.S. 160 (1949)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Pringle*, 540 U.S. at 371, (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). This "reasonable ground for belief" must be more than mere suspicion but may be less than a prima facie proof. *United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016); *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Indeed, the Sixth Circuit has repeatedly recognized that "probable cause is not a high bar[.]" *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023) (internal quotations omitted); *see also United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021).

Here, Trooper Siterlet had probable cause to stop the rented Equinox on September 27, 2021 because he saw the Equinox violate two separate provisions of the Michigan Motor Vehicle Code. The Michigan Motor Vehicle Code requires drivers "approaching an intersection" to "stop at a clearly marked stop line . . . before entering the intersection[.]" MICH. COMP. LAWS § 257.649(4)(a). But Trooper Siterlet saw the Equinox stop at an intersection well beyond the clearly marked stop line, prior to the Equinox's turn.  This civil infraction was recorded by Trooper Siterlet's dashcam.



Dashcam at 0:13.

Further, the Michigan Motor Vehicle Code requires a car "be driven as nearly as practicable entirely within a single lane" and prohibits crossing the "center line of the roadway" or entering generally prohibits entering the "center lane." MICH. COMP. LAWS § 257.642(1)(b)–(c). But Trooper Siterlet saw the Equinox drive across the center double yellow line for at least six seconds, and this civil infraction was also recorded by his dashcam.



Dashcam at 0:22–28.

Thus, Trooper Siterlet's observations of what he reasonably believed to be at least two violation of the Michigan Motor Vehicle Code gave him probable cause to pull the Equinox over. Despite these clear traffic violations, Defendant argues there was not probable cause because the violations were "de minimis" and because the stop was pretextual. But, as explained below, both arguments are misplaced.

### i. "De Minimis" Traffic Violations

First, Defendant argues that the traffic violations were "de minimis" and "insufficient to establish probable cause" because the Equinox only drove "on the line" but did "not cross" it. ECF Nos. 134 at pageID.1340, 1344; 158 at PageID.1463–67. But the relevant inquiry is whether law enforcement officers—here, Trooper Siterlet—possessed probable cause *to believe* that a traffic violation occurred; not whether such violation occurred in fact. *United States v. Collazo*, 818 F.3d

247, 254 (6th Cir. 2016); *United States v. Huff*, 630 F. App'x. 471, 495 (6th Cir. 2015) ("Probable cause does not require an actual finding of a [traffic] violation[.]"); *United States v. Sanford*, 476 F.3d 391, 396 n. 2 (6th Cir. 2007).

Defendant relies on the nearly 25-year-old Sixth Circuit decision in *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000). In *Freeman*, police observed a motor home "cross the white line separating" the lane it was driving in from the interstate emergency lane on a windy day. *Id.* at 465, 467. Police effectuated a traffic stop citing a violation of Tennessee Code which provides that a car "shall be driven as nearly as practicable entirely within a single lane." *Id.* (citing TENN. CODE ANN. § 55-8-123). Once police stopped the motor home, and after receiving consent to "look around," police found marijuana hidden inside. *Id.* at 466. The district court denied a motion to suppress brought by the driver and passenger of the mobile home, finding the stop was supported by probable cause. *See id.* But the Sixth Circuit disagreed and suppressed the seized marijuana, holding "that one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time" did not establish probable cause to believe the mobile home was failing to stay "as nearly as practicable" within a single lane. *Id.*

Although *Freeman* has not yet been directly overruled, its holding has since been highly criticized, including by the Sixth Circuit itself. *See, e.g.*, *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) (describing *Freeman*'s conclusion as "controversial"); *United States v. Simpson*, 520 F.3d 531, 540 (6th Cir. 2008) ("[W]e have grave doubts about the correctness of *Freeman*[.]"); *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004) (same); *United States v. Chandler*, No. CRIM.A. 10-23, 2010 WL 2870874, at *8 (E.D. Ky. July 2, 2010), *report and recommendation adopted*, No. CRIM.A. 2:10-23-DCR, 2010 WL 2870723 (E.D. Ky.

July 20, 2010), *aff'd*, 437 F. App'x 420 (6th Cir. 2011) ("Not only has *Freeman* been highly criticized, but its continuing authority has been questioned on multiple occasions.").

Whatever weight *Freeman* may still carry, it is nevertheless distinguishable. True, as Defendant emphasizes, *one* of the two Michigan Motor Vehicle Code provisions cited in this case is similar to the Tennessee Code cited in *Freeman*. *Compare* MICH. COMP. LAWS § 257.642(1)(a) ("A vehicle must be driven as nearly as practicable entirely within a single lane and must not be moved from the lane until the operator has first ascertained that the movement can be safely made.") *with* TENN. CODE ANN. § 55-8-123(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.") But, unlike the Tennessee Code cited in *Freeman*, the Michigan Motor Vehicle Code *additionally* prohibits drivers from "cross[ing] the center line" on a road providing the two-way movement of traffic. *Compare* MICH. COMP. LAWS § 257.642(1)(b) *with* TENN. CODE ANN. § 55-8-123(1). And, unlike the mobile home in *Freeman* which touched the white emergency lane line for only an "instant" on a windy day, the rented Equinox here crossed the double yellow center line for six seconds. Dashcam at 0:22–28. Most importantly, unlike the police in *Freeman* who only observed one alleged traffic violation, Trooper Siterlet observed at least two. ECF No. 130 at PageID.1322; Dashcam at 0:13–0:28.

In sum, the two traffic violations Trooper Siterlet observed on September 27, 2021 were not "de minimis" and created probable cause to stop the Equinox.

### ii. Pretext

Second, Defendant seeks suppression because, in his view, the traffic stop was pretextual. ECF Nos. 121 at PageID.1232–33; 121-1 at PageID.1244–46; 134 at PageID.1343. Defendant has repeatedly argued that MSP conspired against him and his Codefendants because they are Black.

*See* ECF No. 195 at PageID.1714 ("I believe that the stop was made because it was a driving while black."); *see also United States v. Andrews,* No. 1:22-CR-20114-2, 2024 WL 195959, at *5 (E.D. Mich. Jan. 18, 2024). Notably, during the January 2, 2024 evidentiary hearing, Defense Counsel conceded that, despite months of discovery and the Government's substantial disclosures, he has no evidence that even slightly corroborates this claim.[3] *Andrews*, 2024 WL 195959, at *5. However, even if Trooper Siterlet had an ulterior motive when he pulled the Equinox over—a factual conclusion the record in no way supports—his "actual subjective motivation" is irrelevant to the stop's constitutionality under the Fourth Amendment. *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008). Nearly 30 years ago, in *Whren v. United States*, the Supreme Court "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved" and noted that, although "the Constitution prohibits selective enforcement of the law based on considerations such as race[,]" such claims are cognizable under the Fourteenth Amendment Equal Protection Clause, not the Fourth Amendment. 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Accordingly, because Trooper Siterlet had sufficient probable cause that the rented Equinox violated two provisions of the Michigan Motor Vehicle Code, any subjective motivations he may have had when effectuating the stop are not proper grounds to warrant suppression under the Fourth Amendment. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the

---

[3] Trooper Siterlet expressly testified that race played no factor when he decided to stop the Equinox. ECF No. 195 at PageID.1738–39 (when asked by Defense Counsel whether he pulled the Equinox over "on the basis that [Defendant] [was] black," Trooper Siterlet responded "[n]ot at all" and that he pulled over the Equinox because he observed multiple traffic violations).

resulting stop is not unlawful and does not violate the Fourth Amendment" even if the stop was pretextual). In sum, Trooper Siterlet's traffic stop was supported by probable cause and did not violate the Fourth Amendment.

### C.  Defendant's Detention

Having concluded that Trooper Siterlet's initial traffic stop did not violate the Fourth Amendment, this Court next turns to Defendant's twelve-minute detention from the moment Trooper Siterlet concluded the traffic violation investigation to the moment Trooper Siterlet completed searching the Equinox. *See* Dashcam at 2:12–14:00. Defendant argues that his pre-arrest detention lacked probable cause in violation of the Fourth Amendment. ECF Nos. 121-1 at PageID.1246–48; 158 at PageID.1467. But officers do not need probable cause to detain throughout a *Terry* stop. Practically, Defendant's pre-arrest detention is best thought of in two stages: (1) from the moment Trooper Siterlet learned that Defendant and Codefendants were unauthorized to possess or drive the rental car until Trooper Siterlet discovered the gun at Moore's feet; and (2) from the moment Trooper Siterlet discovered the gun until the completion of the subsequent search. Throughout *both* stages Trooper Siterlet had reasonable, articulable, and particularized suspicion of criminal activity sufficient to detain Defendant because, among other factors, Defendant and his Codefendants were riding in a rental car they were not authorized to drive or possess. Trooper Siterlet's finding a firearm on the Equinox's floor both bolstered his reasonable suspicion of criminal activity and introduced the need to reasonably detain Defendant to ensure officer safety. Thus, Defendant's pre-arrest detention did not violate the Fourth Amendment and suppression is not warranted.

Like the initial traffic stop, Trooper Siterlet detained and seized Defendant by keeping him in the Equinox while Siterlet talked to Codefendant Morgan; and by directing him out of the car,

handcuffing him, and frisking him after finding the gun on the Equinox's floor. *See* Dashcam at 2:12–14:00; *see also Crawford v. Geiger*, 996 F. Supp. 2d 603, 619 (N.D. Ohio 2014) (citing *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984)); *Fisher v. Jordan*, No. 23-1246, 2024 WL 194976, at *2 (6th Cir. Jan. 18, 2024); *supra* Section III.B. But, unlike the initial traffic stop which required *probable cause* to believe a traffic law had been violated, *see supra* Section III.B., Defendant's subsequent detention is analyzed under a different standard.

In *Terry v. Ohio*, the Supreme Court held that law enforcement officers may briefly detain suspects based on something less than probable cause so long as the officer has reasonable, articulable, and particularized suspicion that the suspect has been involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27–28 (1968); *see also United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999) ("Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot."); *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) ("To detain a motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct.").

A lower bar than probable cause, reasonable articulable suspicion is analyzed under the totality of the circumstances and requires only "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) ("This means that [courts] must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately."); *see also United States v. Cortez*, 449 U.S. 411, 417–18 (1981)

("Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity."); *United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence."); *United States v. Knox*, 839 F.2d 285, 290 (6th Cir.1988) ("[A] pattern of suspicious behavior need only be recognizable by one versed in the field of law enforcement." (internal quotations omitted)).

Further, "the authority to conduct a *Terry* stop is narrowly drawn so as to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *United States v. Foster*, 376 F.3d 577, 585 (6th Cir. 2004) (internal quotations omitted).

The Sixth Circuit analyzes the constitutionality of *Terry* stops by examining (1) whether there was a proper basis for the stop; and (2) whether the degree of intrusion was reasonably related in scope to the situation at hand. *Kowolonek v. Moore*, 463 F. App'x 531, 534 (6th Cir. 2012). But Defendant does not contest the scope of Trooper Siterlet's *Terry* stop, and instead argues only that the detention lacked a proper basis. ECF No. 121-1 at PageID.1246–48; 134 at PageID.1344–45.

Before discovering the gun on the Equinox's floor, Trooper Siterlet had reasonable, articulable, and particularized suspicion to consider that Defendant and Codefendants may have stolen the Equinox or may have been using it for drug trafficking. First, Trooper Siterlet observed that Defendant and his Codefendants were nervous, breathing heavily, and immediately texting.[4]

---

[4] Although nervousness is "generally included as one of several grounds for finding reasonable suspicion," it is entitled to "little weight" in the overall analysis because, understandably, most citizens are nervous when confronted by law enforcement. *United States v. Smith*, 263 F.3d 571, 591 (6th Cir. 2001); *see also see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting

ECF No. 130 at PageID.1323. Second, Defendants were driving through a high-crime neighborhood late at night.[5] ECF No. 125 at PageID.1291. Third, Codefendant Morgan—the driver—did not have a driver's license. ECF No. 130 at PageID.1323. Fourth, Codefendant Morgan had nearly $5,000 in cash on his person, despite telling Trooper Siterlet that he was unemployed. *Id.*; *see also United States v. Morris*, 533 F. App'x 538, 541 (6th Cir. 2013) (noting "large amount[s] of cash" found throughout a traffic stop bolsters reasonable suspicion of criminal activity). Fifth—and most importantly—Defendant and Codefendants were not authorized by the rental agreement to drive or possess the Equinox. ECF Nos. 125 at PageID.1292; 130 at PageID.1322; *see United States v. Boyce*, 351 F.3d 1102, 1109 (11th Cir. 2003) ("[I]t raises a reasonable suspicion that the car is stolen if the rental agreement shows that the person detained is not authorized to drive the vehicle."); *United States v. Ma*, 254 F. App'x 752, 754 (10th Cir. 2007) (finding reasonable suspicion when authorized rental car driver was driving without the person who executed the rental agreement); *United States v. Smith*, 263 F.3d 571, 592 (6th Cir. 2001) (noting that a defendant's lack of authorization to drive a stopped rental car may be a "critical factor" in the reasonable suspicion analysis to justify the defendant's detention under *Terry*); *United States v. Winters*, 782 F.3d 289, 300 (6th Cir. 2015) (noting lack of rental authorization is a "critical factor" evidencing a reasonable suspicion of drug trafficking, especially when the party named in the rental agreement is not in the car).

_____

nervousness throughout traffic stop bolsters reasonable suspicion of criminal activity; *United States v. Morris*, 533 F. App'x 538, 541 (6th Cir. 2013) (same).

[5] Although Defendant's presence in a "'high crime area,' standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime[,]" it is nevertheless a relevant "contextual consideration" in this analysis because "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

In addition to all of these factors which, under the totality of the circumstances, justified Defendant's pre-arrest detention, Trooper Siterlet found a firearm on the floor of the Equinox while attempting to direct Codefendant Moore out of the car so it could be towed. ECF No. 130 at PageID.1323. Aside from bolstering Trooper Siterlet's reasonable, articulable, and particularized suspicion of criminal activity, the gun justified Defendant's prolonged detention and protective frisk to protect the responding MSP Troopers from a reasonable threat to officer safety. *See U.S. v. Montes*, 400 F. App'x 390, 393–96 (10th Cir. 2010) (finding reasonable fear for officer safety to justify detention when officer saw a handgun grip in plain view while asking suspect to exit stopped car).

In sum, Defendant's pre-arrest detention—a *Terry* stop—did not violate the Fourth Amendment because, under the totality of the circumstances, it was supported by Trooper Siterlet's reasonable, articulable, and particularized suspicion that Defendant and Codefendants may have stolen the Equinox or were using it to traffic drugs. And, during Defendant's detention, Trooper Siterlet's finding a firearm on the car's floor both bolstered this suspicion and introduced an additional reasonable fear for officer safety to justify detention.

### D. Defendant's Arrest

Having found both the traffic and *Terry* stops constitutional, this Court turns finally to Defendant's argument that his ultimate arrest lacked probable cause in violation of the Fourth Amendment. ECF Nos. 121-1 at PageID.1246–48; 134 at PageID.1344–45. Having already uncovered drugs, guns, and cash, and knowing none of the Equinox's occupants were authorized to drive or possess it, Trooper Siterlet reasonably believed Defendant engaged in drug trafficking and related offenses. Trooper Siterlet's arrest did not violate the Fourth Amendment and suppression is not warranted.

The Fourth Amendment requires police to possess probable cause prior to arresting a suspect. *See Fisher v. Jordan*, No. 23-1246, 2024 WL 194976, at *3 (6th Cir. Jan. 18, 2024). Recall, as discussed in Section III.B, that probable cause is a fluid, "'practical and common-sensical standard' based on 'the totality of the circumstances.'" *Smith v. City of Wyoming*, 821 F.3d 697 (6th Cir. 2016), *as amended* (May 18, 2016) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). Probable cause is satisfied when the facts and circumstances within an officer's knowledge are "sufficient . . . to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (quoting *United States v. Davis* 430 F.3d 345, 352 (6th Cir.2005) and *Brinegar v. United States*, 388 U.S. 160 (1949)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Pringle*, 540 U.S. at 371, (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). This "reasonable ground for belief" must be more than mere suspicion but may be less than a prima facie proof. *United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016); *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). And the Sixth Circuit has repeatedly recognized that "probable cause is not a high bar[.]" *Fisher v. Jordan*, No. 23-1246, 2024 WL 194976, at *3 (6th Cir. Jan. 18, 2024); *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023) (internal quotations omitted); *see also United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021).

The probable cause bar is easily overcome, here. Before Defendant's arrest, Trooper Siterlet found the following in the rented Equinox occupied by Defendant and his Codefendants:

(1) a 9mm Glock semi-automatic handgun with an extended magazine loaded with 31 rounds of ammunition, ECF No. 130 at PageID.1327;
(2) a .45 caliber modified fully automatic Glock 21 with a laser sight and a loaded 30-round drum magazine, *id.* at PageID.1328;
(3) 3.94 grams of fentanyl, *id.*; and
(4) .99 grams of crack cocaine. *Id.*

Trooper Siterlet reported that the two Glocks recovered from the rented Equinox were consistent with the types of firearms drug traffickers often use to "protect themselves and their narcotics." *Id.* at PageID.1326. And Trooper Siterlet reported that both the quantity and packaging of recovered fentanyl and cocaine were consistent with drug trafficking, too. *Id.* In addition to the drugs and guns seized from the car, prior to Defendants' arrest, Trooper Siterlet found nearly $5,000 in cash on Codefendant Morgan's person, even though Morgan told Trooper Siterlet he was unemployed. *Id.* at PageID.1323, 1326–27. Further, Trooper Siterlet knew that the Equinox was rented but also knew that none of its occupants were authorized to drive the car under the rental agreement. *Id.* at PageID.1326. And Trooper Siterlet reported that, based on his law enforcement experience, this conduct was "consistent" with efforts by drug traffickers to "limit their personal liability." *Id.*

Despite the significant quantity of drugs, multiple firearms, and Defendant's conduct being consistent with drug trafficking, Defendant argues the gun found at *Codefendant Moore's* feet does not establish probable cause to arrest *Defendant* because Trooper Siterlet's arrest report noted a "large amount of mechanical and electrical equipment" under Defendant's front-passenger seat would have prevented the pistol passing from the front to the back of the car, under Defendant's seat. ECF Nos. 130 at PageID.1323; 121-1 at PageID.1247; 134 at PageID.1341; 158 at PageID.1466–67. Defendant's argument is misplaced. First, the gun found at Codefendant Moore's feet was only *one* of the numerous circumstances discussed above which created probable cause to arrest Defendant for drug trafficking offenses. Indeed, multiple other pieces of contraband were discovered in other parts of the Equinox which were more accessible to Defendant. *See* ECF No. 130 at PageID.1323 (noting the modified fully automatic Glock, fentanyl, and crack cocaine were discovered in the middle console, next to Defendant). Second, binding Supreme Court precedent supports probable cause to arrest *all* occupants within a vehicle in which police discover

contraband.  In *Maryland v. Pringle*,  the Supreme Court found that police, after stopping a car for speeding, had probable cause to arrest all occupants—including front-seat-passenger Pringle—when a consensual search revealed five baggies of cocaine behind the car's back-seat armrest. *Maryland v. Pringle*, 540 U.S. 366 (2003). Given the "relatively small automobile," the Court found it "entirely reasonable" that "any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Id.* at 372. Thus, the Court held, a "reasonable officer would conclude there is probable cause to believe" that all occupants were jointly engaged in criminal activity. *Id.* at 372–73. The same result here.

In sum, every step of the MSP's encounter with Defendants and Codefendants on September 27, 2021 accorded with the Fourth Amendment. Trooper Siterlet's initial traffic stop was supported by probable cause to believe that the Equinox violated multiple provisions of the Michigan Motor Vehicle Code. Trooper Siterlet's *Terry* stop, detaining Defendant, was supported by both reasonable suspicion of criminal activity and a reasonable fear of officer safety. And, under the totality of the circumstances, Defendant's arrest was supported by probable cause because Defendant's and Codefendants' conduct was consistent with drug trafficking and because Trooper Siterlet discovered significant quantities of drugs and two firearms inside the Equinox. Having found no underlying Fourth Amendment violation, Defendant's Motion to Suppress will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress, ECF No. 121, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

Dated: February 13, 2024                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

- 23 -